Jimmy Lee SMITH,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT,
Respondent-Appellee.

No. 84–3448.

United States Court of Appeals,
Eleventh Circuit.

Nov. 14, 1985.

Sarah M. Bleakley, Tallahassee, Fla., Gregg D. Thomas, Holland & Knight, Tampa, Fla., Julian Clarkson, Tallahassee, Fla., for petitioner-appellant.

John Tiedemann, Asst. Atty. Gen. of Florida, Tallahassee, Fla., for respondent-appellee.

Before GODBOLD, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

In this capital case, we review the district court's dismissal of appellant Jimmy Lee Smith's petition for writ of habeas corpus. We reverse and remand for an evidentiary hearing.

## FACTS

On May 3, 1978, in Jackson County, Florida, law enforcement officers found the bodies of Bonnie Myrle Ward and her twelve-year old daughter, Donna Lynn Strickland. Their deaths occurred as the result of multiple stab wounds.

On May 1, 1978, the appellant, Jimmy Lee Smith, aroused the suspicions of a bank teller when he attempted to cash a check drawn on another bank. Although law enforcement officers responded promptly and chased the vehicle Smith was driving, he evaded capture.

The next day, law enforcement officers found the vehicle abandoned. The vehicle belonged to Bonnie Myrle Ward. The same day on which law enforcement officers found the abandoned vehicle, they arrested Smith and charged him with forgery. Pursuant to a search incident to Smith's arrest, law enforcement officers seized a pocket knife and a ladies' watch. The watch was identified at trial as that of Bonnie Myrle Ward.

Upon arrival at the jail, Smith requested to speak to a lawyer. An assistant public defender, Herman D. Laramore, was at the jail and conferred with Smith. At the conclusion of their conversation, Laramore advised Smith that he should make no statements to law enforcement officers.

On May 3, 1978, when Smith appeared for his first appearance hearing on the forgery charges, the court appointed the public defender's office to represent him. Later that day, Ron Steverson of the Jackson County Sheriff's Department telephoned Laramore and advised him that the bodies of Ward and Strickland had been found and that Smith was a prime suspect in those murders. Upon this notification, Laramore again visited Smith in the jail and advised him not to make any statements to law enforcement officers.

That same day, Steverson questioned Smith about the homicides in the absence of, and without prior notification to, Smith's counsel. After the interrogation, Steverson advised Laramore that he had interrogated Smith.

The next day, May 4, 1978, law enforcement officials arrested Smith for the Ward and Strickland murders. In the absence of, and without prior notification to Smith's counsel, Steverson again interrogated Smith. This time Smith confessed to both homicides. After taking the confessions, Steverson notified Laramore.

On May 5, 1978, Steverson filed complaints against Smith for the murders of the two victims. At his first appearance on the murder charges, Smith signed an acknowledgement of rights form and requested the appointment of counsel.

Over the next several days, Smith made five additional statements: both an oral and a written confession on May 5, a videotaped confession on May 6, a written confession on May 9, and a written confession on May 16.

## PROCEDURAL HISTORY

On June 6, 1978, a grand jury indicted Smith for the murders of Ward and Strickland. After pleading not guilty to each count, Smith was tried before a jury and convicted of both murders. On November 12, 1981, on mandatory appeal, Smith's con-

victions and sentences were affirmed. *Smith v. State*, 407 So.2d 894 (Fla.1981) (*Smith I*). The United States Supreme Court denied Smith's petition for writ of certiorari. *Smith v. Florida*, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982). On February 5, 1983, following a clemency hearing, the Governor of Florida signed a death warrant for Smith's execution.

On March 9, 1983, without conducting an evidentiary hearing, the state trial court denied Smith's petition for post-conviction relief brought pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. The Florida Supreme Court affirmed the state trial court's denial of relief. *Smith v. State*, 445 So.2d 323 (Fla.1983) (*Smith II*). The United States Supreme Court then denied Smith's second petition for writ of certiorari. *Smith v. Florida*, —— U.S. ——, 104 S.Ct. 2671, 81 L.Ed.2d 375 (1984). During the pendency of the state proceedings, pursuant to 28 U.S.C.A. § 2254 (West 1977), Smith filed a habeas corpus petition in the federal district court. On March 11, 1983, the federal district court ordered a stay of Smith's execution, but one month later, dismissed the habeas corpus petition, without prejudice.

On June 15, 1984, the Governor of Florida issued a second death warrant ordering Smith's execution. On July 9, 1984, the state trial court dismissed Smith's second motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. The Florida Supreme Court affirmed that judgment on appeal. *Smith v. State*, 453 So.2d 388 (Fla.1984) (*Smith III*).

On July 9, 1984, Smith filed his second federal habeas corpus petition. On July 11, 1984, without an evidentiary hearing, the district court dismissed Smith's petition and denied his request for a certificate of probable cause to appeal.

On July 12, 1984, pursuant to 28 U.S.C.A. § 2251 (West 1971), this court granted Smith's emergency motion for stay of execution and issued a certificate of probable cause to appeal. *Smith v. Wainwright*, 737 F.2d 1036 (11th Cir.1984).

## ISSUES

Smith makes three claims for relief on appeal: (1) that he was denied his sixth amendment right to an impartial jury in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); (2) that the state of Florida withheld exculpatory information relevant to the issue of mitigation in the penalty phase of his trial, in violation of the teachings of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (3) that he was denied his sixth amendment right to the effective assistance of counsel at both the guilt-innocence and penalty phases of his trial. Additionally, Smith contends that an evidentiary hearing is necessary to determine factual issues necessary to resolution of the issues he raises on appeal.

## DISCUSSION

### I. *Witherspoon* Claim.

Smith contends that his sixth amendment right to an impartial jury was violated by the exclusion for cause of three prospective jurors because of their opposition to capital punishment, in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

Smith alleges that the issue of whether a prospective juror was improperly excused on the basis of his opposition to the death penalty is a mixed question of law and fact; therefore, this court is not bound by the state nor the district courts' resolution of this issue.

Smith interprets *Witherspoon* to permit exclusion of a juror for cause only if the juror makes it "unmistakably clear" that he would automatically vote against the imposition of the death penalty. *Witherspoon*, 391 U.S. at 522 n. 21, 88 S.Ct. at 1777 n. 21. Smith alleges that the state's questions on voir dire were not adequately formulated to determine whether a prospective juror could set aside his personal beliefs regarding the death penalty and abide by his duty to apply the law to the facts as presented. He also contends that

the prospective jurors' responses to the state's inquiries as to their convictions about the death penalty were so ambiguous that it is difficult to discern whether they could have in fact set aside their personal beliefs and applied the law to the facts as presented in this case.

The state contends that Smith is in procedural default on the *Witherspoon* issue; therefore, we are precluded from addressing the issue on the merits. In the alternative, the state argues that this issue presents a question of fact entitled to a presumption of correctness; therefore, we are bound by the state court's determination that *Witherspoon* was not violated.

At the outset, we address the state's argument that Smith defaulted on this claim. Although Smith raised the *Witherspoon* issue before the state courts and the federal district court, the state contends that Smith is in procedural default because he did not raise before those courts the grounds which he now urges before this court.

■ We find that the substance of the *Witherspoon* claim was presented to both the state courts and the district court. This is all that is required. *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Hutchins v. Wainwright,* 715 F.2d 512, 519 (11th Cir.1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984). Moreover, the state courts and the federal district court addressed this issue on its merits; consequently, this issue is properly before us.

■ In *Wainwright v. Witt,* —— U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (U.S. 1985), the United States Supreme Court held that the determination of a juror's bias against imposition of the death penalty is a question of fact entitled to a presumption of correctness under 28 U.S.C.A. § 2254(d).[1] *Witt,* —— U.S. at —— - ——, 105 S.Ct. at 853–56.[2]

---

**1.** Title 28 U.S.C.A. § 2254(d) provides:

(d) In any proceeding instituted in a Federal Court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

**2.** We note that the district court and the parties did not have the benefit of *Witt. Witt* was not decided until after the parties had submitted their appellate briefs to this court.

On direct appeal, the Supreme Court of Florida concluded that the three prospective jurors' representations that under no circumstances would they vote to sentence a person to death, were sufficient to justify their excusal under *Witherspoon. Smith I*, 407 So.2d at 899. Smith, to prevail on this issue, must overcome the *Witt* presumption of correctness.

*Witt* reaffirms the test first enunciated in *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980), "as the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment. That standard is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Witt*, —— U.S. at ——, 105 S.Ct. at 851–52 (footnote omitted) (quoting *Adams*, 448 U.S. at 45, 100 S.Ct. at 2526). The prospective jurors in this case stated that under no circumstances would they vote for imposition of the death penalty. These responses were sufficient to meet the test for excusal under *Witt.*

Both the fact-finding process and the development of the material facts were adequate in this case. Accordingly, we are bound by the state court's findings of fact and conclude that the three prospective jurors were properly dismissed for cause.

## II. *Brady* Claims.

Smith also contends that the state violated his fifth amendment right to due process by withholding two pieces of allegedly exculpatory evidence relevant to the issue of mitigation in the penalty phase of his trial, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The state argues that we are bound by the Florida Supreme Court's finding that Smith is in procedural default on both these claims. Smith concedes that the Florida Supreme Court found him to be in procedural default on these claims, but contends that the state court's discussion of the merits of these claims waives any procedural default and permits us to address the claims on their merits.

The federal district court agreed with the state court's finding that Smith was in procedural default on these claims, but held in the alternative, that because the material at issue involved Smith's own life story of which he was aware, he had failed to state a claim for relief under *Brady.*

### A.

Smith's first *Brady* claim relates to statements which his mother made to state officials concerning his troubled childhood. Smith alleges that these statements would have corroborated statements which he made in the May 6 videotaped confession and would have added evidence in mitigation. The Florida Supreme Court held that Smith failed to properly present this claim because the allegations in support of the claim were not submitted in the form of a sworn motion, as is required by Rule 3.850 of the Florida Rules of Criminal Procedure. *Smith II*, 445 So.2d at 326.

Had the Florida Supreme Court stopped at that point, this would be a much easier issue to resolve because we are bound to follow a state court's application of its procedural rules. The Florida Supreme Court went on, however, to hold:

> Moreover, *even if* [Smith's] *Brady* claim had been preserved and *even if* we were to consider the merits of this claim, we *would* have to hold that it is insufficient as a matter of law. *Brady* requires that the defendant not be aware of the evidence before or during trial. *Arango v. State*, 437 So.2d 1099 (Fla.1983). The information contained in the affidavit was obviously available to [Smith] and to trial counsel insofar as it involves [Smith's] own life story.

*Smith II*, 445 So.2d at 326 (emphasis added). Smith relies upon this language and *Dobbert v. Strickland*, 718 F.2d 1518, 1524–25 (11th Cir.1983), in urging us to reach the merits of these claims.

*Dobbert* presented a situation analogous to that with which we are confronted here. In that case, however, the state court first

rejected the petitioner's claim on the merits and then proceeded to find that he was in procedural default on the claim.

We stated in *Dobbert* that a state court's rejection of a claim both on the merits and on the ground of procedural default "might well give the federal court the option to refuse to review the merits of the issue because of a state court procedural default." *Dobbert*, 718 F.2d at 1525. Although in *Dobbert* we chose to address both the issue of procedural default and the merits of the petitioner's claim, we conclude that that approach is not necessary in this case.

*Dobbert* reaffirmed the general rule that "where a state court clearly and correctly applies a procedural default rule, *Sykes* requires the federal court to abide by the state court's decision even though the state court discusses the merits as an alternate ground for rejecting a claim." *Dobbert*, 718 F.2d at 1524 (citing *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). In a case where the state court finds the petitioner in procedural default, yet proceeds to discuss the merits of the petitioner's claim, our task is to determine the actual basis of the state court decision. *Dobbert*, 718 F.2d at 1524–25; *Ratcliff v. Estelle*, 597 F.2d 474, 478 (5th Cir.), *cert. denied*, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979).[3]

It is clear from the language of the Florida Supreme Court's opinion that the basis of its denial of relief on this claim was the procedural irregularity in the manner in which the allegations supporting the claim were submitted to the state trial court.[4] In addressing Smith's second *Brady* claim, the Florida Supreme Court reaffirmed that it had rejected the first *Brady* claim "be-

cause of procedural irregularities." *Smith III*, 453 So.2d at 389.

 Accordingly, we hold that the Florida Supreme Court denied Smith relief on this *Brady* claim on the grounds of procedural default; therefore, we are precluded from addressing this issue on its merits. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). As we held in *Hall v. Wainwright*, 733 F.2d 766, 777 (11th Cir.1984):

> A state court is entitled to express its view on federal constitutional issues without waiving its procedural default rules.

### B.

Smith's second *Brady* claim relates to reports of psychiatric evaluations which Smith underwent while he was institutionalized at the Arthur Dozier School for Boys. Smith raised this claim in his second petition for post-conviction relief. The state trial court dismissed Smith's petition "on the grounds that this successive 3.850 motion is an abuse of the post-conviction process." The Florida Supreme Court affirmed the dismissal of the petition stating:

> We agree. All of the six points raised by Smith are issues which were or could have been raised on direct appeal and thus are foreclosed from consideration under post-conviction relief.

*Smith III*, 453 So.2d at 388 (citation omitted).

Again, however, the Florida Supreme Court discussed the merits of Smith's claim. In so doing, it relied upon its disposition of Smith's first *Brady* claim:

> We rejected [Smith's first] *Brady* claim *because of procedural irregularities* but went on to *note* that the claim was with-

---

**3.** Decisions of the Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit until overruled by this court sitting en banc. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc).

**4.** The Florida Supreme Court's discussion of Smith's first *Brady* claim began:
 The state argues, first of all, that this issue should not be considered by this Court be-

cause it was contained in an unsworn motion contrary to the requirements of the Florida Rules of Criminal Procedure. *See* Florida Rules of Criminal Procedure 3.850. The trial court refused to consider this issue on this basis and we agree that the trial court was procedurally precluded from giving this issue consideration.
*Smith II*, 445 So.2d at 326.

out merit because '*Brady* requires that the defendant not be aware of the withheld evidence before or during trial' and the allegedly withheld evidence 'was obviously available to [Smith] and to the trial counsel insofar as it involves [Smith's] own life story.' *Smith II* [445 So.2d] at 326. For the same reason we now reject Smith's similar claim.

*Smith III*, 453 So.2d at 389 (emphasis added).

Consistent with our analysis of the Florida Supreme Court's disposition of Smith's first *Brady* claim, we conclude that the Florida Supreme Court denied Smith relief on this second *Brady* claim on the ground of procedural default. Therefore, we are precluded from addressing Smith's second *Brady* claim on its merits.

Smith has failed to demonstrate cause for his failure to abide by the state's procedural rules and any resulting prejudice therefrom. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[5]

### III. Ineffective Assistance of Counsel Claim.

Smith's primary claim is that his trial counsel was constitutionally ineffective at both the guilt-innocence and penalty phases of his trial, and that he is entitled to an evidentiary hearing to develop material facts relative to this claim.

### A. Analytical Framework.

The burden is on Smith in this habeas corpus proceeding to establish the need for an evidentiary hearing. *Williams v. Griswald*, 743 F.2d 1533 (11th Cir.1984); *Birt v. Montgomery*, 725 F.2d 587 (11th Cir.1984). Our threshold inquiry in determining whether Smith has met that burden is to "determine whether [his] allegations, if proved, would establish the right to habeas relief." *Townsend v. Sain*, 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963).

■ In evaluating a habeas corpus petitioner's request for an evidentiary hearing, we must "consider the allegations of the [petitioner's] habeas petition and supplement the petition with those facts undisputed on the record below." *Birt*, 725 F.2d at 591. Having reviewed the allegations set forth in Smith's habeas corpus petition and the few undisputed facts of record and concluded that those allegations, if true, are sufficient to state a constitutional violation, we proceed to determine whether the material facts were adequately developed in the state court, and, if they were not, whether the failure to develop the material facts is attributable to Smith's inexcusable neglect or deliberate bypass. *Thomas v. Zant*, 697 F.2d 977, 986 (11th Cir.1983).

### B. Standard of Review.

Smith raised the ineffective assistance of counsel issue in his first motion for state post-conviction relief. After a non-evidentiary hearing, the state trial court denied Smith relief on the ground that he had "expressed complete satisfaction with the performance of his trial counsel." The Florida Supreme Court affirmed the denial of relief, but on the ground that Smith failed to demonstrate that he was prejudiced by his trial counsel's alleged errors. *Smith II*, 445 So.2d at 325.

■ The issue of whether Smith received ineffective assistance of counsel is a mixed question of law and fact. *Strickland*, 466 U.S. at ——, 104 S.Ct. at 2070, 80 L.Ed.2d

---

5. Even *if* we were to agree with Smith's analysis of this issue and reach the merits of his *Brady* claims, we would still have to deny him relief. "*Brady* does not require the government to turn over information which, 'with any reasonable diligence, [the defendant] can obtain himself.'" *Jarrell v. Balkcom*, 735 F.2d 1242, 1258 (11th Cir.1984) (quoting *United States v. Campagnuolo*, 592 F.2d 852, 861 (5th Cir.1979)).

Both Smith's traumatic childhood and his institutionalization at the Arthur Dozier School for Boys are obviously part of his life history and, therefore, are matters of which Smith should be aware. Moreover, the psychological report prepared by two court-appointed psychologists makes reference both to Smith's turbulent childhood and institutionalization at the Arthur Dozier School for Boys. Contrary to his argument here, Smith was obviously cognizant of this information.

at 700; *Douglas v. Wainwright*, 714 F.2d 1532, 1554 (11th Cir.1983). Therefore, we are not bound by the finding of either the state court or the district court that Smith received effective assistance of counsel.

### C. Application.

■ As a general rule, a habeas corpus petitioner must allege specific errors in his counsel's performance to support a claim for ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Where, however, a petitioner demonstrates that circumstances surrounding his representation give rise to a presumption of prejudice, he will prevail. *United States v. Cronic*, 466 U.S. 648, —— —— n. 20, 104 S.Ct. 2039, 2046 n. 20, 80 L.Ed.2d 657, 666–67 n. 20 (1984); *Warner v. Ford*, 752 F.2d 622, 624–25 (11th Cir.1985) (distinguishing *Martin v. Rose*, 744 F.2d 1245, 1250–51 (6th Cir.1984)). Smith relies upon both standards, in the alternative.

### 1. *Strickland.*

*Strickland* enunciates a two-part test for determining whether a defendant has received ineffective assistance of counsel. The inquiry under the first prong of the test focuses upon the counsel's performance:

The court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

*Strickland*, 466 U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

Under the second prong of the test, the defendant must prove that he was prejudiced by his counsel's alleged deficient performance:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.... When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.

*Strickland*, 466 U.S. at ——, 104 S.Ct. at 2068–69, 80 L.Ed.2d at 698.

*Strickland* held that

[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at ——, 104 S.Ct. at 2069–70, 80 L.Ed.2d at 699. The district court addressed the prejudice prong first, we likewise address the prejudice prong of the test first.

The primary alleged error upon which Smith premises his ineffective assistance of counsel claim is that his trial counsel failed to move to suppress Smith's numerous confessions. This failure to move to suppress the confessions was *extremely* prejudicial to Smith.

Smith's trial counsel decided that Smith had "no valid defense." Smith's trial counsel's affidavit stated that the state had other overwhelming evidence of Smith's guilt, but produced only enough evidence for conviction.[6] Yet, Smith's confessions

---

**6.** The state submitted to the district court an affidavit of trial counsel. There is some dispute among the parties as to the weight to be given the trial counsel's affidavit. In the district court, Smith objected to the submission of the affidavit because he did not have an opportunity to respond to it as is required by the local rules of civil procedure. The district court expressly recognized Smith's concern. The district court stated, "For purposes of summary judgment proceedings obviously Mr. Smith's attorneys have not had an opportunity to at least respond

provided the primary evidence offered and the only evidence which the state needed to convict him of first degree murder.

■ It appears from the present record that defense counsel's failure to challenge the admissibility of the confessions eliminated the need for the state to submit any other evidence. The confessions placed Smith in victim Ward's automobile; the confessions placed Smith at the scene of the murders; the confessions identified the murder weapon and put it in Smith's hand. Without the confessions, conviction for first degree murder was probably impossible. Only the confessions told the circumstances under which the stab wounds were inflicted. The confessions also provided the only evidence of premeditation. Moreover, the confessions contained vivid details of the murders and of Smith's feeling of satisfaction at having committed the crimes. Smith also confessed to having committed several other crimes, including murder and numerous rapes.

The Supreme Court has expressly stated: "[E]ven when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt." *United States v. Cronic,* 466 U.S. 648, —— n. 19, 104 S.Ct. 2039, 2045–46 n. 19, 80 L.Ed.2d 657, 666 n. 19 (1984). Being merely a spectator to the state's presentation of evidence will not meet the standard for effective assistance of counsel.

Because Smith's trial counsel failed to move to suppress the confessions, the state's case was not subjected to the meaningful adversarial testing which is required under our system of justice. On the present record, we find that Smith suffered prejudice because of this failure.

Having concluded that Smith was prejudiced by his trial counsel's failure to move to suppress Smith's numerous confessions, the only issue on remand is whether trial counsel's performance was reasonable under the performance prong of *Strickland.*

Under the performance prong of *Strickland,* the burden of proof is upon Smith to "overcome the [strong] presumption that, under the circumstances, [his trial counsel's failure to move to suppress the numerous confessions] 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at —— – ——, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 694–95 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

The reasonableness of trial counsel's failure to move to suppress Smith's several confessions depends upon whether trial counsel conducted a reasonable investigation into the merits of such a motion, or whether he made a reasonable decision that such an investigation was unnecessary. *Strickland,* 466 U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. The reasonableness of trial counsel's failure to move to suppress the confessions is a factual issue which must be viewed in light of the circumstances at the time of his decision. *Strickland,* 466 U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

Neither the state court nor the federal district court made any findings as to whether Smith's trial counsel's failure to move to suppress the confessions constituted "sound trial strategy." No evidence exists in the record that trial counsel conducted *any* investigation into the merits of a motion to suppress Smith's confessions.

to that affidavit in some way, but I find that the affidavit *is properly filed* with the court. But I'm not going to consider it for purposes of ruling either on a motion to dismiss or motion for summary judgment." (Emphasis added).

The state argues that Smith raised the issue of the submission of the affidavit for the first time in his reply brief to this court. On this ground, the state moved the court to strike Smith's reply brief. Because this issue was raised and ruled upon by the district court, we deny the state's motion to strike Smith's reply brief.

Although the affidavit was not relied upon by the district court, Smith relies upon the affidavit because it "is informative and advisory of the role played by [Smith's] trial counsel and his insight into various issues." We agree and also rely upon the affidavit to demonstrate the need for development of material facts relevant to Smith's ineffective assistance of counsel claim.

Trial counsel does, however, cite two rationales in support of the reasonableness of his decision not to conduct such an investigation. These rationales are presented in an unanswered affidavit. Assertions in affidavits are a far cry from assertions made under circumstances which subject them to probing cross-examination.

Trial counsel contends that he did not move to suppress Smith's confessions because such a motion "would have been frivolous." Trial counsel arrived at this conclusion based upon the fact that Smith had twice disregarded his instructions not to make any statements to the authorities, that Smith had signed several waiver forms, and that Smith would not have cooperated in litigating the motion to suppress because of his close relationship with Steverson. Trial counsel also gives as a reason for not moving to suppress the confessions the fact that Smith made no complaints of threats or coercion, or of promises having been made in consideration for his confessions. These proffered rationales for failing to move to suppress Smith's confessions raise several important factual questions.

First, we note that Smith's May 4, 1978, confession was never introduced into evidence nor even mentioned at trial.[7] Thus, we know nothing about the circumstances surrounding Smith's first confession. The fact that the confession was not admitted into evidence does not negate the need for such an inquiry. Although the Supreme Court has never held that the inadmissibility of a confession *automatically* precludes the admission into evidence of subsequent statements, it has held that subsequent confessions must be excluded where the coercion surrounding the first statement had not dissipated at the time of the subsequent statements. *United States v. Bayer,* 331 U.S. 532, 541, 67 S.Ct. 1394, 1398–99, 91 L.Ed.2d 1654 (1947); *see also, Oregon v. Elstad,* —— U.S. ——, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (where initial

confession voluntary, voluntariness of subsequent statements depends upon whether they were knowingly and voluntarily given); and *Leon v. Wainwright,* 734 F.2d 770, 772–73 (11th Cir.1984) and cases cited therein.

Smith was in custody at the time that Steverson approached him on May 4, 1978, and questioned him about the Ward and Strickland homicides. Thus, the question arises as to whether Steverson properly advised Smith of his fifth amendment rights to remain silent and to the presence of an attorney, as required under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Even if Smith was advised of his rights, the question still remains whether he invoked any of those rights. We note that Smith did request appointment of a lawyer immediately after he was arrested on the forgery charges and brought to the jail. If Smith did invoke his right either to remain silent or to the presence of an attorney, the question then becomes "whether his 'right to cut off questioning' was 'scrupulously honored.'" *Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975) (footnote omitted) (quoting *Miranda,* 384 U.S. at 479, 86 S.Ct. at 1630).

If Smith's request that questioning cease was honored, it is clear that Steverson subsequently resumed the questioning. Under these facts, the question then becomes who initiated the subsequent interrogation. *Oregon v. Bradshaw,* 462 U.S. 1039, 1043–46, 103 S.Ct. 2830, 2833–35, 77 L.Ed.2d 405, 411–12 (1983); *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). If Smith initiated the subsequent interrogation, the question remains whether Smith knowingly and voluntarily waived his right to have counsel present during that interrogation. *Bradshaw,* 462 U.S. at 1044–47, 103 S.Ct. at 2834–36, 77 L.Ed.2d at 412–13; *Edwards,* 451 U.S. at 486 n. 9, 101 S.Ct. at 1885 n. 9.

---

7. Yet, according to the complaints which Steverson filed charging Smith with the murders, the May 4, 1978, confession was the basis upon which Smith was arrested and charged with the murders.

Smith alleges that he was denied his sixth amendment right to counsel, as well. The first factual question under sixth amendment analysis is at what point did Smith's right to counsel attach. *See, e.g., United States v. Gouveia,* 467 U.S. 180, ——, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146, 153–54 (1984).

Adversarial judicial proceedings were initiated against Smith when he was arrested and charged with the murders at 5:00 p.m. on May 4. Smith's sixth amendment right to counsel clearly attached at that point. *Gouveia,* 467 U.S. at ——, 104 S.Ct. at 2297, 81 L.Ed.2d at 153–54.

The record does not reflect precisely when Smith made the alleged May 4 confession. It is entirely possible, however, that Smith was arrested and that, consequently, his sixth amendment right to counsel had attached, *before* he made the confession. In any event, Smith's sixth amendment right to counsel had undoubtedly attached by the time of his May 5 statements, the earliest of the confessions admitted at trial. Smith was clearly entitled to have an attorney present during the May 5 interrogations and may have been entitled to have an attorney present during the May 4 interrogation, as well. *Brewer v. Williams,* 430 U.S. 387, 389, 401, 97 S.Ct. 1232, 1235, 1240–41, 51 L.Ed.2d 424 (1977).

It is important to note that Smith's sixth amendment right to counsel did not depend upon his requesting that an attorney be present. *Brewer,* 430 U.S. at 404, 97 S.Ct. at 1242. Once Smith's right to counsel attached, Steverson could not properly interrogate Smith in the absence of counsel, unless Smith knowingly and voluntarily waived that right.

The central inquiry then, under both fifth amendment and sixth amendment analysis, *Tinsley v. Purvis,* 731 F.2d 791, 794 (11th Cir.1984), becomes whether there was "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The question of waiver is a mixed question of law and fact. *Brewer,* 403 U.S. at 403–04, 97 S.Ct. at 1241–42. Two underlying factual inquiries remain to be resolved: (1) whether Smith understood his right to have an attorney present and (2) whether, with that understanding, he voluntarily relinquished that right.

There has been no adversarial testing of the voluntariness of Smith's other confessions. Although the trial court admitted the confessions on the grounds that they had been freely and voluntarily given, the trial court was not called upon to analytically assess whether the confessions had been knowingly and voluntarily made. Trial counsel repeatedly stated that he had no objection to the admission of the confessions. Therefore, the trial court simply summarily accepted the state's submission that the confessions had been freely and voluntarily given.[8]

Trial counsel stated that on two occasions before May 4, he advised Smith not to make any statements to the police. Trial counsel also had several conversations with Steverson. What did they talk about? What instructions, if any, did trial counsel give Steverson regarding the questioning of Smith? If he gave no instructions, why not? The record is silent on these important matters. *Cf. Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424

8. In making these representations, the state relied upon the testimony of Steverson. Steverson testified that before each confession he advised Smith of his rights and Smith signed a waiver-of-rights form. While a waiver-of-rights form is not determinative of the issue of waiver, we note that the state produced only two forms: one for the written statement of May 5 and one for the written statement of May 16.

We also note that Laramore failed to cross-examine Steverson. Apparently fearing that Laramore might object to the admissibility of the confessions, the state requested that Steverson be voir dired about the confessions outside of the presence of the jury. Laramore also failed to question Steverson at that stage in the proceedings. Laramore knew that Steverson had developed an unusually close relationship with Smith, yet he chose not to delve into the nature of that relationship, or to attempt to ascertain how the relationship developed and the nature of the conversations between Steverson and Smith, which preceded Smith's confessions.

(1977) (police interrogated defendant, despite defendant's counsels' repeated request that defendant not be questioned unless they were present).

These are but a few of the factual questions which must be resolved before we can address the issue of whether Smith received ineffective assistance of counsel at the guilt-innocence phase of his trial.

Although the evidentiary hearing which we mandate calls for a "who said what to whom and who did what, when" inquiry, the district court must be, as we are, mindful of the powerful and important principles under consideration in this case. Only a clear and certain waiver by Smith combined with a clear and reasonable choice by Smith's trial counsel can prevent the finding that Smith's right to effective assistance of counsel, as guaranteed by the Constitution, has been denied.

### 2. *Cronic.*

Smith also urges us to find that his trial counsel's overall performance was so deficient that prejudice should be presumed under the standard enunciated in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).[9]

*Cronic* represents a narrow exception which the Supreme Court has carved out of the general rule that a petitioner claiming ineffective assistance of counsel must demonstrate that he was prejudiced by specific alleged errors in his counsel's performance. *Chadwick v. Green*, 740 F.2d 897, 900 (11th Cir.1984). Consequently, the burden of proof under *Cronic* is a very heavy one. We have yet to find that a petitioner received ineffective assistance of counsel under the *Cronic* standard based solely upon

his counsel's performance, without regard to some interference attributable to the state. *See, e.g., Chadwick v. Green*, 740 F.2d 897 (11th Cir.1984). We have, however, implicitly recognized that counsel's tactical decision to stand silent and not participate in a defendant's trial may constitute ineffective assistance of counsel under the *Cronic* standard. *Warner v. Ford*, 752 F.2d 622, 624–25 (11th Cir.1985).

Prejudice is presumed under the *Cronic* analysis. The emphasis, therefore, is upon the circumstances under which counsel performed or whether counsel performed in a truly adversarial manner. Here, as under the *Strickland* analysis, the facts must be more fully developed before we can determine whether Smith has met his burden of proof under *Cronic.*

The failure to develop the relevant material facts cannot be attributed to any neglect or bypass on Smith's part. *Thomas v. Zant*, 697 F.2d 977, 986 (11th Cir.1983). Both Smith and the state requested an evidentiary hearing on the ineffective assistance of counsel claim before the state court. Smith also requested an evidentiary hearing before the federal district court.

We reverse the judgment of the district court denying Smith relief on the ineffective assistance of counsel claim and remand the action for an evidentiary hearing to develop the material facts relevant to the claim. If trial counsel's decision not to move to suppress the confessions was unreasonable, the district court should grant the writ of habeas corpus.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

**9.** Smith contends that his trial counsel was deficient in several respects, including: (1) failing to conduct an adequate voir dire of prospective jurors consistent with the precepts of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); (2) failing to investigate and present evidence of Smith's mental state at the time of the alleged murders; (3) failing to inform the trial court that Smith had attempted suicide while in jail pending trial, and that pursuant to a physician's instructions, Smith was taking psychotropic medication while awaiting

trial, and of other evidence tending to show that Smith was incompetent; (4) failing to request a competency hearing under *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); (5) failing to investigate and present mitigating evidence at the penalty phase of Smith's trial; and (6) stipulating to the admission of a videotaped confession of Smith clothed in prison garb during the penalty phase, in violation of the precepts of *Estelle v. Williams*, 425 U.S. 501, 504, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976).