**Richard PORTER, Petitioner,**

v.

**Harry K. SINGLETARY, Secretary, Department of Corrections, State of Florida, Respondent.**

No. 94–667–CIV–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

April 17, 1995.

Richard Porter, Raiford, FL, pro se.

Davis Graham Anderson, Jr., Atty. General's Office, Dept. of Legal Affairs, Tampa, FL, for respondent.

KOVACHEVICH, District Judge.

### *ORDER*

This cause is before the Court on Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### *Procedural History*

The state attorney for the Tenth Judicial Circuit of Florida initiated the prosecution of the petitioner by filing a five count information charging petitioner with two counts of attempted first degree murder, the victims being his wife Shirley Porter and Willie Patterson, one count of being a felon in possession of a firearm, one count of shooting into a building, and one count of violating an injunction for protection against domestic violence.   R at 738–741. Following a motion to sever the felon in possession of a firearm charge, R at 744–

45, the state filed an amended information. The amended information charged two counts of attempted first degree murder, one count of possession of a firearm by a convicted felon, and one count of shooting into a building. R at 751–54. Then the state attorney filed a second amended information. This information charged one count of attempted armed burglary, two counts of attempted first degree murder, one count of shooting into a building, and one count of felon in possession of a firearm. R at 755–58. Then the state attorney filed a third amended information making the same charges. R at 760–64. Apparently the court severed the felon in possession of a firearm charge because appellant went to trial on the first four counts of the third amended information. The jury found petitioner to be guilty of trespass in an occupied structure, a lesser included offense of the attempted armed burglary charge, guilty of two counts of attempted third degree murder, lessers of the attempted first degree murder charges, and guilty as charged of shooting into a building. R at 782–85 (verdict slips). The court sentenced him as a habitual violent felony offender to be imprisoned for ten years on count one concurrent with counts two, three, and four. R at 800. It sentenced him to thirty years for each of the attempted third degree murder charges concurrent with the other charges. R at 801–02. And, it sentenced him to serve thirty years on the shooting into a building charge concurrent with the other sentences. R at 803. The state ultimately nolle prossed the violation of an injunction and felon in possession of a firearm charges. R at 834–35.

Response to Petition for Writ of Habeas Corpus (Hereinafter, "Response"), pp. 2–3 (footnote omitted).

### Petitioner's Direct Appeal

Petitioner appealed from his judgments and sentences. He raised two issues on direct appeal: whether the trial judge had properly refused to disqualify himself, and whether the court had erred in permitting the State to introduce evidence relating to his arrest. The state court of appeal per curiam affirmed. *Porter v. State,* 606 So.2d 1176 (Fla. 2nd DCA 1992).

### Petitioner's Motion for Post Conviction Relief Under Rule 3.850

Petitioner sought post conviction relief in the state court by filing a motion for post conviction relief under Florida Rule of Criminal Procedure 3.850. Petitioner raised six claims in the 3.850 motion. The first claim was ineffective assistance of counsel. Petitioner alleged that his counsel failed to pursue the defense that he offered. He also alleged that his counsel failed to allow him to testify; that his counsel failed to request proper instructions on justifiable and excusable homicide; and that his counsel failed to call Petitioner's witnesses. However, Petitioner did not specify the witnesses or what their testimony would have been.

The second claim was that the State used false evidence at his trial by suppressing the actual photographs of the crime scene.

The third claim was that the trial judge made impermissible remarks before the jury. However, Petitioner did not specify what these remarks were. He also alleged that the trial judge exhibited negative, prejudicial facial and body language before the jury.

The fourth claim was that the panel from which his jury was drawn had only two black people and that both were stricken.

The fifth claim was that the trial court had erred in denying his motion for judgment of acquittal because the State's evidence failed to show that he had a gun or that he shot the victim.

The sixth claim was that his sentences were illegal because a 1988 change in the law operated in an *ex post facto* manner because he was not aware at the time of his pre–1988 convictions that they could be used as grounds to habitualize him later.

The circuit court denied the motion for post conviction relief. The state court held that four of Petitioner's six grounds were procedurally barred including the claims of: fabricated evidence, judicial misconduct, prejudicial striking of jurors, and judicial error in denying the motion for judgment of

acquittal. The state court held that these four issues "should have been or could have been raised on direct appeal and are not cognizable under a motion for post conviction relief." *See* Respondent's Exhibit 005. Petitioner appealed from the order denying his motion for post conviction relief and the state court of appeal per curiam affirmed. *Porter v. State*, 630 So.2d 1111 (Fla. 2nd DCA 1993).

### *Petitioner's State Petition for Writ of Habeas Corpus*

Petitioner also sought habeas corpus relief in the state court of appeal. He claimed that he was being denied an appeal because the record had not been filed and because no specific assistant public defender had been assigned to his file. The court of appeal denied the petition.

### *Petitioner's First Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254*

Petitioner's first petition for habeas corpus relief in this court was filed in Case No. 92–605–CIV–T–15–C. He raised the same grounds as those he raised in his state petition for writ of habeas corpus. This Court denied the petition as moot because his appeal was proceeding.

### *Petitioner's Second Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254*

On April 19, 1994, Petitioner filed his current petition for writ of habeas corpus. He raises six claims for relief, which are essentially identical to the six claims raised in Petitioner's State Rule 3.850 Motion:

I. Petitioner was denied his Rights under the 5th, 6th, and 14th Amendments to the U.S. Constitution because the state fabricated evidence.

II. Petitioner was denied Effective Assistance of Counsel.

III. Petitioner was denied a Fair Trial because of the Trial Judge's misconduct and partiality.

IV. Petitioner was denied the right to trial by a jury of his peers because the panel from which the jurors were selected had only two (2) blacks, both of which were struck, leaving only white jurors.

V. The Trial Judge erred in denying defendant's Motion for Judgment of Acquittal.

VI. Petitioner's sentences are illegal as an *ex post facto* application of the law.

Petitioner has failed to raise any claim that merits habeas relief for the following reasons.

### DISCUSSION

#### *Abuse of the Writ*

■ Respondent initially raised abuse of the writ as a defense to the current petition. Abuse of the writ is not applicable because the Court dismissed Petitioner's first petition as moot.

#### *Grounds I, III, IV, and V and Procedural Default*

Petitioner raised Grounds I, III, IV, and V of the petition in his State Rule 3.850 Motion. The state court held that they were procedurally defaulted.

■ Federal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law. *Coleman v. Thompson*, 501 U.S. 722, 729–31, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991).

Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default. *Wainwright v. Sykes*, 433 U.S. 72, 87 [97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594] (1977); *Presnell* [*v. Kemp* ], 835 F.2d 1567, 1580 (11th Cir.1988). "[W]here a state court correctly applies a procedural default principle of state law, *Sykes* requires the federal court to abide by the state court decision." *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.), *cert. denied*, 498 U.S. 832 [111 S.Ct. 96, 112 L.Ed.2d 68]

(1990); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.), *cert. denied*, [:—— U.S. ——] 115 S.Ct. 673 [130 L.Ed.2d 606] (1994).

Petitioner has not shown cause and prejudice to excuse the procedural bar. Therefore, Grounds I, III, IV, and V are procedurally barred from review by this Court.

### Ground II—Ineffective Assistance of Counsel

Petitioner claims that he was denied effective assistance because:

> Counsel failed to pursue the defense which defendant offered. Counsel failed to allow the defendant to testify in his own behalf. Counsel failed to request proper instruction of justifiable and excusable homicide. Counsel failed to call the defense witnesses, and misled defendant into believing they were going to testify and that defendant did not need to testify. (See Appendix A).

Petition for Writ of Habeas Corpus, p. 6.

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). Counsel can deprive a defendant of the right to effective assistance simply by failing to render "adequate legal assistance." *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir.1984). The test in determining whether this benchmark has been met is two pronged. Petitioner must show both ineffective assistance and resulting prejudice. *Smith v. Wainwright*, 741 F.2d 1248, 1254 (11th Cir.1984). The test was explained in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) as follows:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaran-

teed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

In applying the *Strickland* components,

> [a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Smith v. Wainwright*, 777 F.2d 609, 616 (11th Cir.1985).

Under the performance component,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

*Smith*, 777 F.2d at 616 (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066).

Under the prejudice component,

> [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.... When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.

*Smith*, 777 F.2d at 616 (citing *Strickland*, 466 U.S. at 694–95, 104 S.Ct. at 2068).

In reviewing counsel's performance under the first prong of *Strickland*, "a court must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689, 104 S.Ct. at 2065. Petitioner has failed to rebut this presumption and has not shown that as a result of counsel's conduct there was an actual adverse effect on the outcome of the proceedings.

### Failure To Advocate Defense

■ Petitioner Porter alleges generally that his attorney was ineffective because he did not advocate Petitioner's defense. In his State Rule 3.850 Motion, Petitioner alleged that his defense would have been that (1) he did not shoot into the apartment, (2) he did not have a gun, (3) he heard Mrs. Porter screaming and believed that she was in danger, (4) he tried to gain entry into the apartment but was shot by a gun fired inside. Petitioner's Sworn Memorandum in Support of the Petition for Post Conviction Relief, p. 10, Appendix A.

The record refutes Petitioner's claim. In his opening statement, Petitioner's defense counsel argued:

> ... she [Mrs. Porter] initiated contact with him [Mr. Porter] and told him that she wanted to talk to him about the divorce.... Mr. Porter knew that he had an injunction that had been issued, so he couldn't go to her house, but she said I want to talk to you, come by the house.
>
> Unfortunately he didn't follow his best instincts and he went there. And when he went there—and when he got there he saw Mrs. Porter and Mr. Patterson having an argument.... [a]nd Mr. Patterson snatched Mrs. Porter into the apartment and slammed the backdoor. So he ran around to the front door and was trying to find out what was going on. Inside there was some screaming going on.... [E]ven Officer Link, the officer who was jogging ... could hear some screaming.
>
> Mr. Porter asked what was going on. He heard things said like, Don't do it. Don't do it. And the next thing he knew

gunshots were fired at him. And, in fact, he got hit in one or two of his fingers as he was standing on the porch.

Record pp. 277–279.

This argument is almost indistinguishable from the defense that Petitioner claims was not asserted. Petitioner does not allege that any additional defense should have been raised, except that of justifiable homicide as discussed below. This ineffective assistance of counsel claim does not meet the *Strickland* test. Therefore, the claim does not warrant habeas relief.

### Waiver of Excusable and Justifiable Homicide Instructions

■ Petitioner asserts that his counsel was ineffective because he waived the excusable and justifiable homicide instructions to the jury. Defense counsel waived the instructions because they did not apply to the facts of Petitioner's case: Petitioner claimed that he did not have the gun. If he did not have the gun, he could not have committed homicide. Therefore, the instructions were not applicable. This ineffective assistance of counsel claim does not meet the *Strickland* test. Therefore, the claim does not warrant habeas relief.

### Failure To Allow Petitioner To Testify

■ Petitioner asserts that his counsel was ineffective because his attorney "failed to allow the defendant to testify in his own behalf." Petitioner's assertion fails to meet the first prong of *Strickland* because Petitioner agreed not to testify.

The following dialogue took place after the close of the State's case. Petitioner, but not the jury, was present in the courtroom,

> THE COURT: You don't need to make a motion for directed verdict at this time. But do you know what you're going to do on the defense case?
>
> MR. MASLANIK (defense attorney): Yes, Your Honor, we at this time pretty much intend to call one witness.
>
> THE COURT: In addition to the defendant.

MR. MASLANIK: No, just one witness and that will not be the defendant.

THE COURT: Okay.

MR. MASLANIK: I do need to talk to Mr. Porter for a few minutes to make sure that the decision we made last night is still what we intend to do today as far as not calling him as a witness.

THE COURT: Okay. But you are going to call one?

MR. MASLANIK: I have got one witness.

Record at 549–50.

The dialogue between the trial judge and the defense attorney supports a finding that Petitioner agreed not to testify. First, the defense attorney refers to a conversation with Petitioner on the evening before trial when they had agreed that Petitioner would not testify. Second, the defense attorney told the trial judge in open court that Petitioner/Defendant would not be testifying and that they had agreed on that decision. Petitioner, who was present, did not object.

■ A criminal defendant has a constitutional right to testify in his own behalf at his trial, *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975), based on the Fourteenth, Fifth, and Sixth Amendments to the Constitution. *See Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

■ In *Rock*, "the Supreme Court did not need to decide whether the constitutional right to testify was fundamental in character, and therefore personal to the defendant, or whether it could be waived by the defense attorney." *U.S. v. Teague*, 953 F.2d 1525 (11th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 127, 121 L.Ed.2d 82. However, the Eleventh Circuit has held that a criminal defendant has a fundamental right to testify in his or her own behalf at trial; therefore, the right can only be waived by the Defendant, not by the trial court or by defense counsel. *Teague*, 953 F.2d at 1532.

■ The court has no obligation to inquire into whether the defendant knowingly and intelligently waived the right not to testify inherent in the privilege against compelled self-incrimination. *U.S. v. Martinez*, 883 F.2d 750, 757 (9th Cir.1988). It is primarily the responsibility of counsel, not the judge, to advise a defendant on whether or not to testify, and the tactical advantages and disadvantages of each choice. *Id.*

Whether Defendant's waiver of the right to testify must be on the record is a separate issue. In analogous situations, courts have found that waiver can be by conduct [or lack of conduct] alone. For example, "[w]here a defendant foregoes his personal and fundamental right to represent himself and proceed with counsel, it is not the norm for the record to show that by proceeding with counsel the defendant has knowingly and understandingly waived his right to represent himself." *Id.* "All courts reaching the question have uniformly and explicitly held that absent a request from the defendant a court has no duty *sua sponte* to advise him of his right to self-representation, nor any duty to ensure on the record that waiver of this right was knowing and intelligent." *Id.* By analogy, the same rule should apply where a defendant fails to take the witness stand because of his counsel's advice. *Id.*

Likewise, defense attorneys make the decision not to cross-examine without first informing their clients that they have a fundamental constitutional right to insist upon cross-examination and without obtaining a formal waiver on the record from the defendant. *Martinez* is persuasive for the proposition that a defendant can waive a fundamental and personal right such as that of testifying by conduct alone.

In the present case, Petitioner Porter did not object when his counsel stated, in open court, that Petitioner would not be testifying and that they had agreed upon this decision.

Petitioner has not alleged that counsel prevented him from testifying or told him he could not testify. Defense counsel did not threaten to withdraw if Petitioner elected to testify. *See Wright v. Estelle*, 549 F.2d 971 (5th Cir.1977), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978) (court found error was harmless because the evidence was overwhelming). This ineffective assistance of counsel claim does not meet the *Strickland*

test. Therefore, the claim does not warrant habeas relief.

### Failure To Call Defense Witnesses

██ Petitioner asserts that he was denied effective assistance of counsel because his counsel failed to call the defense witnesses, and misled Petitioner into believing that they were going to testify and that Petitioner did not need to testify. Petitioner does not allege the substance of the witnesses' testimony. Instead, he claims that their testimony would have "substantially refuted the testimony of the State's witnesses, as would have the Petitioner's testimony." The allegation lacks sufficient specificity to meet the first prong of the *Strickland* test. The vague allegations do not rebut the presumption that the counsel's actions "might be considered sound trial strategy." *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This ineffective assistance of counsel claim does not meet the *Strickland* test. Therefore, the claim does not warrant habeas relief.

Because none of Petitioner's ineffective assistance of counsel claims meet the *Strickland* test, Petitioner is not entitled to habeas corpus relief on Ground II.

### Ground VI—Sentences Are Illegal as Ex Post Facto

██ Petitioner alleges that:

Petitioner's sentences are illegal in that the statute under which the defendant's sentence was habitualized, was not the law at the time of the commission of the offense. Therefore, application of Statute § 775.084 in this case is prohibited under the *ex post facto* law. (See Appendix A).

Petition for Writ of Habeas Corpus, p. 10B (1994). Petitioner's claim has no merit because at the time he committed the crime, July 4, 1990, the statute had been in effect for almost two years—since October 1, 1988.

Furthermore, Petitioner's claim has no merit as set out in Appendix A. In Appendix A, Petitioner argued that "the use of any convictions of the Accused prior to the effective date of the 1988 amendment as qualifying offenses would constitute an *ex post facto* law." ·

██ The United States Constitution provides that "[n]o state shall ... pass any ... *ex post facto* law." U.S. Const., Art. I, § 10, cl. 1. "This clause prohibits the states from enacting any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then described." *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (*quoting Cummings v. Missouri,* 71 U.S. 277, 4 Wall 277, 325–26, 18 L.Ed. 356 (1887)). Three critical elements must be present to establish an *ex post facto* violation: (1) the statute must be a penal or criminal law, (2) it must be applied retrospectively, and (3) it must disadvantage the offender because it may impose a greater punishment. *Id.* at 29, 101 S.Ct. at 964.

██ The law need not impair a "vested right" to violate the *Ex Post Facto* Clause; a violation may occur if the law "merely alters penal provisions accorded by the grace of the legislature." *Id.* at 30, 101 S.Ct. at 964–65. If, however, the law is merely procedural and does not add to the quantum of punishment, it cannot violate the *Ex Post Facto* Clause even if it is applied retrospectively. *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977); *Paschal v. Wainwright,* 738 F.2d 1173, 1175 (11th Cir. 1984). "The *Ex Post Facto* Clause operates not to protect an individual's right to less punishment, but rather as a means of assuring that an individual will receive fair warning of criminal statutes and the punishments they carry." *Hock. v. Singletary,* 41 F.3d 1470, 1471 (11th Cir.1995) (citations omitted).

The constitutionality of using previous offenses prior to the enactment of an habitual (or second) offender statute has been frequently upheld. In *McDonald v. Commonwealth of Massachusetts,* 180 U.S. 311, 312, 21 S.Ct. 389, 390, 45 L.Ed. 542 (1901), the Court held, "The fundamental mistake of the plaintiff in error is his assumption that the judgment below imposes an additional punishment on crimes for which he had already been convicted and punished ... The punishment is for the new crime only, but it is heavier if he is an habitual criminal." Fur-

ther, the Court stated, "The allegation of previous convictions is not a distinct charge of crimes but is necessary to bring the case within the statute, and goes to the punishment only. The statute, imposing a punishment on none but future crimes, is not *ex post facto*." *McDonald*, 180 U.S. at 313, 21 S.Ct. at 390. In *Pettway v. United States*, 216 F.2d 106 (6th Cir.1954), *certiorari denied*, 355 U.S. 918, 78 S.Ct. 348, 2 L.Ed.2d 277, the Court held that a second offender statute did not constitute an *ex post facto* law. *See also, Beland v. United States*, 128 F.2d 795 (5th Cir.1942), *certiorari denied*, 317 U.S. 676, 63 S.Ct. 157, 87 L.Ed. 543.[1]

Petitioner is not entitled to habeas corpus relief on ground VI. Accordingly, the Court orders:

That Petitioner's petition is DISMISSED, with prejudice. The Clerk is directed to close this case.

DONE AND ORDERED.

---

1. Although not binding on this court, it is instructive to note that the Supreme Court of Florida has expressly held that Section 775.084 does not violate the constitutional prohibitions against double jeopardy and *ex post facto* laws. *Raulerson v. State*, 609 So.2d 1301 (Fla.1992); *Merriweather v. State*, 609 So.2d 1299 (Fla.1992); and *Tillman v. State*, 609 So.2d 1295 (Fla.1992).