# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## JUNE, 1997 SESSION

FILED

December 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **NAPOLEON MOMON,** | ) | |
| | ) | No. 03C01-9605-CR-00187 |
| Appellant, | ) | |
| | ) | |
| vs. | ) | Hamilton County |
| | ) | |
| **STATE OF TENNESSEE,** | ) | Honorable Stephen M. Bevil, Judge |
| | ) | |
| Appellee. | ) | (Post-Conviction) |
| | ) | |

FOR THE APPELLANT:
On Appeal:
STEPHEN M. GOLDSTEIN
314 Vine St.
Chattanooga, TN 37403

At the Hearing:
WILLIAM J. MARETT, JR.
Bryan & Marett
211 Third Ave. North
Nashville, TN 37201

FOR THE APPELLEE:
JOHN KNOX WALKUP
Attorney General & Reporter

JANIS L. TURNER
Counsel for the State
450 James Robertson Parkway
Nashville, TN 37243-0493

WILLIAM H. COX
District Attorney General

THOMAS J. EVANS
Assistant District Attorney General
600 Market St., Ste. 310
Chattanooga, TN

OPINION FILED: _____

**AFFIRMED**

CURWOOD WITT
JUDGE

OPINION

The petitioner, Napoleon Momon, appeals pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure from the Hamilton County Criminal Court's denial of post-conviction relief. The petitioner was convicted in 1991 of second degree murder in the shooting death of his wife, Jacqueline Daniel Momon, and received a twenty-five-year sentence.[1] His conviction was affirmed on direct appeal to this Court. State v. Napoleon Momon, No. 03C01-9205-CR-00174 (Tenn. Crim. App., Knoxville, Nov. 20, 1992).

On August 17, 1995, the petitioner instituted this post-conviction proceeding in which he alleged that he was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Tennessee Constitution.[2] After an evidentiary hearing on the merits, the trial court found that (1) defense counsel's decision to rest without calling the defendant to the stand was the result of trial strategy based on the results of the first trial; (2) based on the defendant's claim of

---

[1]    The trial on October 3 - 4, 1991 was the second trial. On June 5, 1991, the jury acquitted the petitioner of first degree murder but could not reach a decision on the lesser included offense of murder in the second degree.

[2]    Specifically, the petition alleges that Momon's attorney failed to raise a defense, failed to consult with his client, failed to investigate the circumstances surrounding the death, failed to impeach the witnesses, failed to conduct an adequate voir dire, and failed to obtain the victim's medical and psychological records. At the hearing, testimony about counsel's failure to raise a defense centered on the right of the defendant to testify on his own behalf, and the trial judge made findings on that issue. In this instance, the allegations raised in the petition, particularly the failures to raise a defense and to consult with the defendant prior to the second trial, are sufficient to raise the issue of whether an attorney's unilateral decision to put on no proof violates a defendant's constitutional right to be heard on his own behalf. We are mindful, however, that post-conviction petitions are heard upon the issues raised by the pleadings and that the failure to allege a specific ground for ineffective assistance of counsel may result in waiver of the issue on appeal. Steven Mason v. State, No. 01CO1-9610-CC-00428, slip op. at 4(Tenn. Crim. App., Nashville, Sept. 30, 1997). See also State v. Smith, 814 S.W.2d 45, 49 (Tenn.1990).

2

accident, his attorney had no reason to pursue a self-defense theory; (3) any evidence relating to self-defense, including the victim's counseling records, would have been irrelevant; (4) defense counsel had numerous meetings with the defendant and his son and was sufficiently familiar with the case; and (5) the attorney conducted an appropriate voir dire and the defendant never indicated to the attorney that he wanted any particular juror removed. Based on these findings, the trial judge held that the petitioner was not denied the effective assistance of counsel and dismissed the petition.

In this appeal, the petitioner contends that his counsel was ineffective because he

1. refused to allow him to testify at the second trial;

2. failed to raise the defense of self-defense and failed to obtain the victim's counseling records that would have been relevant to that defense;

3. failed to investigate and interview the state's witnesses.

4. failed to confer with the petitioner prior to his second trial.

We have carefully reviewed the record and the applicable law, and, for the reasons discussed below, we affirm the judgment of the trial court.

**Standard of Review**

The Sixth Amendment of the United States Constitution and Article I, § 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel. Baxter v. Rose, 523 S.W.2d 930

3

(Tenn. 1975). When a defendant claims ineffective assistance of counsel, the standard applied by the courts of Tennessee is "whether the advice given or the service rendered by the attorney is within the range of competence demanded by attorneys in criminal cases." Summerlin v. State, 607 S.W.2d 495, 496 (Tenn. Crim. App. 1980).

In Strickland v. Washington, the United States Supreme Court defined the Sixth Amendment right to effective assistance of counsel. 466 U.S. 668, 104 S.Ct. 2052 (1984). First, the appellant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and must demonstrate that counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Constitution. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. Second, the petitioner must show that counsel's performance prejudiced him and that those errors were so serious as to deprive the defendant of a fair trial and to call into question the reliability of the outcome. Id.

A reviewing court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance and must evaluate counsel's performance from counsel's perspective at the time of the alleged error and in light of the totality of the evidence. Strickland, 466 U.S. at 695. Petitioner must demonstrate that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. Id.

The findings of fact made by the trial court at the conclusion of a hearing on a petition for post-conviction relief has the weight of a jury verdict.

4

Clark v. State, 800 S.W.2d 500, 506 (Tenn. Crim. App. 1990). As a result, this court is bound by those findings unless the evidence contained in the record preponderates against the judgment. Cooper v. State, 849 S.W.2d 744, 746 (Tenn.1993). In our review we are bound by well-established standards. First, the standard established in Baxter v. Rose does not require perfect representation. State v. Vermilye, 754 S.W.2d 82, 85 (Tenn. Crim. App. 1987). Second, an appellate court does not "second guess" trial counsel's tactical and strategic choices unless those choices are made without adequate knowledge of the facts or the applicable law. Id. Third, the fact that a different procedure or strategy might have produced a different result does not necessarily deprive an accused of the effective assistance of counsel. Id. The burden is on the petitioner to demonstrate that the evidence preponderates against the findings of the trial court. State v. Cook, 749 S.W.2d 42, 45 (Tenn. Crim. App. 1987).

We discuss and decide the issues petitioner has raised with these standards in mind.

## I. Denial of the Right to Testify

The grand jury indicted the petitioner for murder in the first degree in the death of his wife, Jacqueline Momon.[3] The petitioner, who is a paraplegic confined to a wheel chair, testified in his own defense during the first trial.[4] The jury returned a verdict of not guilty of premeditated and deliberate murder but was unable to reach a verdict on the lesser included offense of second degree

---

[3] Although the petitioner had known Jacqueline Momon for about fourteen years, they had been married only three months at the time of her death.

[4] The petitioner is also blind in one eye, deaf, and diabetic.

murder.[5]  Four months later, at the second trial, the state called the same witnesses and presented virtually the same evidence as in the first trial.  The defense rested without putting on any proof, and the jury found Momon guilty of second degree murder.

Trial counsel's testimony at the post-conviction hearing corroborates the petitioner's contention that the attorney made the decision not to call the petitioner as a witness in the second trial.  The attorney acknowledged that,  on the second day of trial, he made the decision without consulting the petitioner and that he told Momon and Momon's son of the decision just before re-entering the courtroom.  The attorney based his decision on the comments of two jurors in the previous trial who told him that they had not believed Momon when he testified that he shot his wife accidentally.  The petitioner contends that the decision to testify or not testify rests with the accused, and that trial counsel was ineffective in that counsel denied the petitioner his fundamental constitutional right to testify on his own behalf.  Moreover, petitioner argues, if he had testified at the second trial, there is a reasonable probability that the outcome would have been different.[6]

_____

[5]    The record of the first trial is not part of the record on appeal. Martin Biesack, who served as defense counsel in both trials and on direct appeal, said that he had the transcript at one time but that he was unable to locate it.  He opined that he may have sent it to Nashville to the Board of Professional Responsibility in response to the petitioner's complaint.

[6]    We are unable to summarize the state's position because the state has not responded specifically to any of the petitioner's allegations.  After reciting the appropriate standard as found in Strickland and Baxter v. Rose, the state's brief concludes with the following paragraph:

> In the case at hand, the trial court found that
> the petitioner was not deprived of effective assistance
> of counsel.  The Court  found that two of the four
> instances of ineffective assistance as charged by the
> petitioner to be without basis in fact.  The Court found
> further that the other complaints amounted to trial

6

For the reasons discussed below, we find that defense counsel failed to advise and consult with his client on the matter of whether or not he should take the stand in his own behalf at the second trial and that, consequently, the petitioner was deprived of his constitutional right to be heard at trial. See U.S. Const. amend. V, VI, XIV; Tenn. Const. art. 1, sec. 9; Rock v. Arkansas, 483 U.S. 44, 49-52, 107 S.Ct. 2704, 2708-09 (1987); State v. Burkhart, 541 S.W.2d 365, 369 (Tenn.1976); Campbell v. State, 469 S.W.2d 506, 509 (Tenn. Crim. App. 1971); State v, Frazier, 683 S.W.2d 346, 353 (Tenn. Crim. App. 1984). However, the petitioner has not carried the burden of demonstrating that, if his attorney had properly advised him and consulted his wishes on the matter, he would have testified and that there is a reasonable probability that, because of his testimony, the outcome of the trial would have been different.

A. A Constitutional Right

The United States Supreme Court has made it clear that a criminal defendant has a constitutional right to testify at trial. United State v. Dunnigan, 507 U.S. 87, 96, 113 S.Ct. 1111, 1117 (1993); Rock v. Arkansas, 483 U.S. 44, 49-52, 107 S.Ct. 2704, 2708-2709 (1987); Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312 (1983); Faretta v. California, 422 U.S. 806, 829-834, 95 S.Ct. 2525, 2538-41 (1975); Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 645 (1971). In Rock v. Arkansas, the Supreme Court stated that, although, under the common law, a criminal defendant was disqualified from testifying,

strategy, and that the petitioner has failed to carry the burden to show that this was ineffective assistance or that the outcome would have been any different.

7

"[a]t this point in the development of our adversary system, it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." 483 U.S. at 49, 107 S.Ct. at 2708.

A defendant's right to testify at a criminal trial originates in three provisions of the United States Constitution.[7] The Fourteenth Amendment's guarantee of due process of law includes the right to be heard and to offer testimony. Rock v. Arkansas, 483 U.S. at 51, 107 S.Ct. at 2709; Faretta v. California, 422 U.S. at 819 n.15, 95 S.Ct. at 2533 n. 15. The Sixth Amendment, which grants an accused the right to call witnesses, logically includes the right to testify at trial if the accused decides it would be advantageous to place his or her testimony before the jury. Rock v. Arkansas, 483 U.S. at 52, 107 S.Ct. at 2709. Moreover, the Court recognized that, under the Sixth Amendment, the right to present the accused's version of events in the accused's own words is even more fundamental than the right to self-representation, a right "necessarily implied by the structure of the amendment." Id. (quoting Faretta v. California, 422 U.S. at 819, 95 S.Ct. at 2533). The right to testify is also "a necessary corollary" to the Fifth Amendment's guarantee against compelled self-incrimination. Id.

---

[7]    For federal cases holding that the right to testify is a fundamental constitutional right see, e.g., United States v. Ortiz, 82 F.3d 1066, 1069 (D.C. Cir. 1996); United States v. Pennycooke, 65 F.3d 9, 10 (3d Cir. 1995); United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993): United States v. Teague, 953 F.2d 1525, 1530(11th Cir. 1992): Underwood v. Clark, 939 F.2d 473, 475, (7th Cir. 1991); United States v. Scott, 909 F.2d 488, 490 (11th Cir. 1990); Wright v. Estelle, 572 F.2d 1071, 1073 (5th Cir. 1978)(en banc); United States ex rel. Frierson v. Gramley, 952 F. Supp 578, 586 (N.D. Ill. 1997): Campos v. U.S., 930 F. Supp. 787, 790 (E.D.N.Y. 1996); Porter v. Singletary, 883 F.Supp. 660, 666 (M.D. Fla. 1995); Smith v. Campbell, 781 F.Supp. 521, 530 (M.D. Tenn. 1991), aff'd without an opinion in 961 F.2d 1578 (6th Cir. 1992), cert. denied 113 S.Ct. 423 (1992); United States v. DiSalvo, 726 F.Supp. 596 (E.D. Pa. 1989); Siciliano v. Vose, 834 F.2d 29 (lst Cir. 1987).

8

Tennessee has long held that an accused's right to be heard at trial is protected under Article 1, Section 9 of the Tennessee Constitution which states, in pertinent part, "[t]hat in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel. . . ."[8] Because the provision was drafted in 1776 when a criminal defendant did not have the right to testify in his own behalf, our supreme court at first interpreted this provision to grant an accused the right to make an unsworn statement to the jury but not the right to testify. Hopkins & Hoopers v. State, 78 Tenn. 204, 206 (1882); Wilson v. State. 50 Tenn. 232, 242-243 (1871). A hundred years after Wilson, in Campbell v. State, 469 S.W.2d 506, (Tenn. Crim. App.), cert. denied (Tenn. 1971), the court noted that under the Tennessee Constitution a person accused of a crime has the right to be heard in his own defense, and that

> [w]hile it is true that no person accused of crime may
> be compelled to testify at his trial, he may do so if he
> chooses; and such evidence is competent if he
> desires to introduce the evidence in his own behalf or
> in any event if he consents to its introduction.

469 S.W.2d at 509. Campbell makes no reference to either Wilson v. State or Hopkins & Hoopers v. State. Five years later, the supreme court revisited the issue and specifically overruled the holdings of both Wilson and Hopkins. State v. Burkhart, 541 S.W.2d 365, 369 (Tenn.1976). In Burkhart, the court held that a criminal defendant has the right to self-representation but no right to make unsworn statements to the jury. 541 S.W.2d at 371-372. The court reasoned that since criminal defendants had been recognized by statute and by actual

---

[8]    Since 1858 the defendant's right to be heard has been protected by statute as well:
>    **Speedy trial -- Right to be heard. --** In all criminal
>    prosecutions, the accused is entitled to a speedy trial,
>    and to be heard in person and by counsel. Tenn.
>    Code Ann. § 40-14-101 (1990).

9

practice as competent witnesses, the better interpretation of Article 1, Section 9 is that:

> In all criminal prosecutions <u>the accused has the right to testify as a witness in his own behalf</u> and to be represented by counsel.

<u>Id</u>. at 371(emphasis added). In <u>State v. Frazier</u>, this court cited the Tennessee Constitution and <u>Campbell v. State</u> in support of it's statement that "[i]n Tennessee, a person accused of a crime is constitutionally entitled to testify in his own behalf." <u>State v. Frazier</u>, 683 S.W.2d 346, 353 (Tenn. Crim. App. 1984). <u>See also</u> <u>State v. Danny Evans</u>, No. 02C01-9205-CR-00109, slip op. at 6-8 (Tenn. Crim. App., Jackson, Nov. 10, 1993).[9] The Tennessee Court of Criminal Appeals recognized the right to testify as being inherent in Article 1, Section 9 of the Tennessee Constitution in 1971, <u>Campbell v. State</u>, 469 S.W.2d at 509, and the Tennessee Supreme Court overruled contradictory precedent in 1975. <u>Burkhart v. State</u>, 541 S.W.2d at 369. We reaffirm that, although the testimony may not be compelled, the constitutions of the United States and the State of

---

[9] Virtually every state court that has considered the issue has made similar findings based on either their state constitutions or the U.S. Supreme Court's dicta in <u>Rock v. Arkansas</u>, 483 U.S. at 49-52; 107 S.Ct. at 2508-2709 and <u>Faretta v. California</u>, 422 U.S. 806, 829-834, 95 S.Ct. 2525, 2538-41 (1975). See, e.g., <u>LaVigne v. State</u>, 812 P.2d 217, 219 (Alaska, 1991); <u>People v. Mosqueda</u>, 5 Cal. App.3d 540, 545, 85 Cal. Rptr. 346, 348 (1970); <u>People v. Curtis</u>, 681 P.2d 504, 509-510 (Colo. 1984); <u>Boyd v. United States</u>, 586 A.2d 670, 672 (D.C. App. 1991); <u>Gill v. State</u>, 632 So.2d 660, 662 (Fla.App. 1994); <u>King v. State</u>, 391 S.E.2d 660, 662 (Ga. 1990); <u>Tachibana v. State</u>, 900 P.2d 1293, 1305 (Haw. 1995); <u>Aragon v. State</u>, 760 P.2d 1174, 1178 (Idaho, 1988); <u>People v. Raso</u>, 602 N.E. 2d 53, 55 (Ill. App. 1992); <u>Taylor v. State</u>, 843 P.2d 682, 687 (Kan. 1992); <u>Commonwealth v. Waters</u>, 506 N.E. 2d 859, 864-865 (Mass. 1987); <u>People v. Simmons</u>, 364 N.W.2d 783, 784 (Mich. App. 1985); <u>State v. Rosillo</u>, 281 N.W.2d 877, 878 (Minn. 1979); <u>Culberson v. State</u>, 412 So.2d 1184, 1186 (Miss. 1982); <u>State v. Hamm</u>, 818 P.2d 830, 833 (Mont. 1991); <u>Ingle v. State</u>, 546 P.2d 598, 599 (Nev. 1976); <u>State v. Savage</u>, 577 A.2d 455, 471 (N.J. 1990); <u>State v. Duran</u>, 731 P.2d 374, 376 (N.M. App. 1986); <u>State v. Ray</u>, 427 S.E.2d 171, 174 (S.C. 1993); <u>State v. El-Tabech</u>, 453 N.W.2d 91, 95 (Neb. 1990); <u>State v. Brooks</u>, 833 P.2d 362, 364 (Utah App. 1992); <u>State v. Mumley</u>, 571 A.2d 44, 45 (Vt. 1989); <u>State v. Thomas</u>, 910 P.2d 475, 477 (Wash. 1996); <u>State v. Neuman</u>, 371 S.E.2d 77, 80-81(W.Va. 1988); <u>State v. Albright</u>, 291 N.W.2d 487, 492 (Wis. 1980); <u>Sanchez v. State</u>, 841 P.2d 85, 87 (Wyo. 1992).

Tennessee recognize that a criminal defendant has the right to testify for the defense at trial.

B. A Right Personal to the Defendant

The United States Constitution grants essentially two categories of rights: those that defense counsel may waive on the defendant's behalf and those that are so fundamental and personal that only the defendant may waive them. See Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 546 (1965). Those rights included in the former are generally matters of trial strategy and tactics such as what evidence should be introduced, what stipulations should be made, and what pre-trial motions should be filed. United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992). Although the United States Supreme Court has not directly addressed the issue, the Court stated in dicta that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312 (1983)(emphasis added). The right to testify is a necessary corollary to the Fifth Amendment guarantee against compelled testimony, Rock v. Arkansas, 483 U.S. at 52, 107 S.Ct. at 2709, and "every criminal defendant is privileged to testify in his own defense, or to refuse to do so." Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 645 (1971).

The vast majority of federal courts that have considered the issue have concluded that the right to testify is a fundamental right that is personal to the defendant.[10] The most serious decisions in a criminal case are whether to

---

[10] See, e.g., United States v. Boyd, 86 F.3d 719, 723 (7th Cir. 1996); United States v. Ortiz, 82 F.3d 1066, 1071 (D.C. Cir. 1996); United States v. Pennycooke, 65 F.3d 9, 11 (3rd. Cir. 1995); United States v. Joelson, 7 F.3d

11

have counsel or represent oneself, to stand trial or to plead guilty, to be tried by a judge or a jury, and to tell one's story or to keep silent, United States v. Boyd, 86 F.3d 719, 723 (7th Cir. 1996), and the decision whether to testify may be the single most important factor in a criminal case. United States v. Teague, 953 F.2d 1525, 1533 (11th Cir. 1992). "In fact, the most important witness for the defense in many criminal cases is the defendant himself," Rock v. Arkansas, 483 U.S. 44, 52, 107 S.Ct. 2704, 2709 (1987), and as the Court has noted in another context, "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." Green v. United States, 365 U.S. 301, 304, 81 S.Ct. 653, 655 (1961)(plurality opinion). Most state courts that have considered the issue have concluded that the accused's right to testify is both fundamental and personal and may be waived only by the defendant.[11]

---

174, 177 (9th Cir. 1993); United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992); United States v. Scott, 909 F.2d 488, 490(11th Cir. 1990); Don v. Nix, 886 F.2d 203, 207(8th Cir. 1989); Siciliano v. Vose, 834 F.2d 29 (1st Cir. 1987); Campos v. United States, 930 F.Supp. 787, 790 (E.D.N.Y. 1996); Porter v. Singletary, 883 F.Supp. 660, 666 (M.D. Fla. 1995); Smith v. Campbell, 781 F.Supp. 521, 530 (M.D. Tenn. 1991), aff'd by memorandum in 961 F.2d 1578 (6th Cir. 1992); United States v. DiSalvo, 726 F.Supp. 596 (E.D. Pa. 1989).

[11] LaVigne v. State, 812 P.2d 217, 219-220 (Alaska, 1991); People v. Curtis, 681 P.2d 504, 509-510 (Colo. 1984); Boyd v. United States, 586 A.2d 670, 673 (D.C. App. 1991); Gill v. State, 632 So.2d 660 (Fla. App. 1994); Tachibana v. State, 900 P.2d 1293, 1299 (Haw. 1995); Aragon v. State, 760 P.2d 1174, 1179 (Idaho, 1988); People v. Raso, 602 N.E.2d 53, 56 (Ill. App. 1992); Commonwealth v. Freeman, 564 N.E. 2d 11, 14 (Mass. App. 1990); State v. Rosillo, 281 N.W.2d 877, 878-79 (Minn. 1979); Culberson v. State, 412 So.2d 1184 (Miss. 1982); Ingle v. State, 546 P.2d 598 (Nev. 1976); State v. Savage, 577 A.2d 455, 471 ( N. J. 1990); State v. Ray, 427 S.E.2d 171, 174 (S.C. 1993); State v. Brooks, 833 P.2d 362, 364 (Utah App. 1992); State v. Mumley, 571 A.2d 44,45 (Vt. 1989); State v. Thomas, 910 P.2d 475, 477 (Wash. 1996); State v. Neuman, 371 S.E. 2d 77, 81 (W.Va. 1988); Sanchez v. State, 841 P.2d 85, 89 (Wyo. 1992). In a few states, however, courts have held that, absent exceptional circumstances, decisions to put on a defense or to waive a defendant's right against self-incrimination at trial are strategic choices which counsel may make without defendant's consent. State v, Rodriguez, 612 P.2d 484, 490 (Ariz. 1980); State v. Mann, 934 P.2d 784, 789 (Ariz. 1997); King v. State, 391 S.E.2d 660, 662 (Ga. 1990); State v. Albright, 291 N.W.2d 487, 492 (Wis. 1980).

This court, relying upon the American Bar Association Standards for Criminal Justice, has previously found that the decision as to whether an accused should testify at trial belongs to the accused. Vermilye v. State, 754 S.W.2d 82, 88 (Tenn. Crim. App. 1987). The standards provide:

> (a) Certain decisions relating to the conduct of the case are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are:
> (I) what plea to enter,
> (ii) whether to waive jury trial; and
> (iii) whether to testify in his or her own behalf.

1 Standards for Criminal Justice Standard 4-5.2(a) (2d ed. 1980). The commentary to this section states that "because of the fundamental nature of these three decisions, so crucial to the accused's fate, the accused must make the decisions." Id. commentary. In accordance with the weight of authority in the federal courts, in the decisions of our sister states, and in our prior decisions, we hold that the right to testify in one's own behalf in a criminal trial is a fundamental and personal right that may be waived only by the accused.

C. Waiver of the Right

We must next consider what constitutes waiver of the right to testify, what obligations defense counsel has and whether the trial court is required to determine, sua sponte, whether the defendant is voluntarily and knowingly waiving the right.

In an unpublished case, one panel of this court stated that "the defendant's conduct provides a sufficient basis from which to infer that the right to testify has been waived," and that "the trial court had no duty to advise the defendant of his right to testify, nor . . . to ensure that on the record waiver had occurred." State v. Danny L. Evans, No. 02C01-9205-CR-00109, slip op. at 11

13

(Tenn. Crim. App., Jackson, Nov. 10, 1993),  perm. app. denied (Tenn. 1994). [12]
The panel relied solely upon the decision in United States v. Martinez, 883 F.2d
750 (9th Cir. 1989).

The Ninth Circuit decided Martinez in 1989 only two years after the
Supreme Court's decision in Rock v. Arkansas, and a number of the federal
courts of appeals and various state courts have ruled on this issue since that
time.   Moreover, the Ninth Circuit  vacated Martinez on other grounds in United
States v. Martinez, 928 F.2d 1470 (9th Cir. 1991).  Therefore, we deem it
prudent to reexamine the issue in light of more recent decisions.

Courts throughout the country have generally adopted one of three
differing approaches to determine whether a defendant has effectively waived
the right to testify.  The general rule is that a personal and fundamental right may
be waived only if there is evidence in the record demonstrating "an intentional
relinquishment or abandonment of a known right or privilege."  Johnson v.
Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023 (1938).  A number of our sister
states require or strongly encourage the trial court to engage each defendant in
an on-the record colloquy to ensure that any waiver of the defendant's right to
testify is knowing and voluntary.[13]  Other courts have held that it may be
"advisable," at least under some circumstances, for trial courts to place a

_____

[12]     The Evans court held that since the petitioner had neither alleged
nor proven that the alleged constitutional violation had an adverse effect on his
case he was not entitled to post-conviction relief.

[13]     LaVigne v. State, 812 P.2d 217 (Alaska, 1991); People v. Curtis,
681 P.2d 504 (Colo. 1984);  Boyd v. United States, 586 A.2d 670 (D.C. App.
1991); Culberson v. State, 412 So. 2d 1184 (Miss. 1982); Brown v. State, 453
S.E. 2d 251 (S.C. 1994) (only in capital cases); State v. Neuman, 371 S.E.2d 77
(W.Va. 1988);  Tachibana v. State, 900 P.2d 1293 (Haw. 1995).

14

defendant's waiver on the record.[14]  These courts reason that since the rights at issue are fundamental to a fair trial, the courts have, under <u>Johnson v. Zerbst</u>, "a serious and weighty responsibility" to determine whether the accused intelligently and competently waived the right. <u>Boyd v. United States</u>, 586 A.2d 670, 675 (D.C. App. 1991).  In addition, proponents contend, advisement on the record will preclude post-conviction disputes between the defendant and counsel over the issues, and, if the issue does arise, the record will facilitate post-conviction and appellate review.  <u>People v. Curtis</u>, 681 P.2d 504, 515 (Colo. 1984).  Under this approach, a trial judge conducts an inquiry into the circumstances of the waiver outside the jury's presence if the defense rests without calling the defendant to the stand.  <u>Curtis</u>, 681 P.2d at 514-515.

Other courts have rejected the colloquy requirement for two reasons.  First, virtually every court considering the issue has concluded that a trial court is under no constitutional requirement to advise a defendant of the right to testify. <u>See</u> <u>e.g.</u> , <u>United States v. Ortiz</u>, 82 F.3d 1066, 1071 (D.C. Cir. 1996);  <u>United States v. Pennycooke</u>, 65 F.3d 9, 11 (3d Cir. 1995); <u>United States v. Joelson</u>, 7 F.3d 174, 177 (9th Cir. 1993); <u>United States v. Teague</u>, 953 F.2d 1525, 1532 n. 8 ( 11th Cir. 1992).  The right to testify is correlative with the right to remain silent. The right to remain silent is waived by the act of taking the

_____

[14]     <u>United States v. </u>Ortiz, 82 F.3d 1066, 1071 (D.C. Cir. 1996)(may be advisable under some circumstances); <u>United States v. Pennycooke</u>, 65 F.3d 9,13 (3d Cir. 1995)(within discretion of trial court in certain circumstances); <u>State v. Gulbrandson</u>, 906 P.2d 579, 598 (Ariz. 1995); <u>Woodward v. United States</u>, 626 A.2d 911, 915 (D.C. App. 1993);  <u>Gill v. State</u>, 632 So.2d 660, 662 (Fla. App. 1994); <u>State v. Hoffman</u>, 778 P.2d 811, 814 (Idaho App. 1989);  <u>Phillips v. State</u>, 782 P.2d 381, 382 (Nev. 1989); <u>State v. Mumley</u>, 571 A.2d 44 (Vt. 1989).  We note that one panel on the Tennessee Court of Criminal Appeals has advised that the defendant's waiver of the right to testify be placed on the record.  <u>Walter Keith Johnson v. State</u>, No. 1037 (Tenn. Crim. App., Knoxville, Sept. 2, 1992). However, the Tennessee Supreme Court granted permission to appeal and affirmed the case per curiam on Feb. 22, 1994.  The court ordered that the opinion not be published.

stand, and the trial court is not required to ascertain for the record whether the defendant is knowingly and voluntarily waiving those rights.  State v. Thomas, 910 P.2d 475, 479 (Wash. 1996); Commonwealth v. Freeman, 564 N.E.2d 11, 15 (Mass. App. 1990).  Second, courts have rejected the requirement fearing that a formal waiver requirement "might provoke substantial judicial participation that could frustrate a thoughtfully considered decision by the defendant and counsel. . . ," People v. Simmons, 364 N.W. 2d 783, 785 (Mich.App. 1985)(quoting from State v.Albright, 291 N.W.2d 487, 490 (Wis. 1980)), and a discussion between the trial judge and the accused "might have the undesirable effect of influencing the decision not to testify."  State v. Thomas, 910 P.2d at 479.[15]

A few courts have adopted the so-called "demand" rule.  In these jurisdictions, a defendant who fails to complain about the right to testify during trial is conclusively presumed to have waived that right.[16]  These courts will not entertain a post-trial challenge based on the right to testify unless the defendant brought the matter to the attention of the trial court.  United States v. Edwards, 897 F.2d 445, 447 (9th Cir. 1990). The demand rule is justified in several ways. The right may be viewed not as "fundamental" but a matter of trial strategy, and therefore counsel may waive the right without consulting the defendant.  State v.

---

[15]    See also Liegakos v. Cooke, 106 F.3d 1381, 1386 (7th Cir. 1997); United States v. Pennycooke, 65 F.3d 9, 13 (3d Cir. 1995); United States v. Joelson, 7 F.3d 174, 178 (9th Cir. 1993); United States v. Scott, 909 F.2d 488, 492-93 (11th Cir. 1990);  Siciliano v. Vose, 834 F.2d 29, 30 (1st Cir. 1987); King v. State, 391 S.E.2d 660, 662 (Ga. App. 1990);  Aragon v. State, 760 P.2d 1174, 1178 (Ida. 1988); People v. Simmons, 364 N.W.2d 783, 785 (Mich. App. 1985).

[16]    United States v. Boyd, 86 F.3d 719 (7th Cir. 1996) (dicta); United States v. Edwards, 897 F.2d 445 (9th Cir. 1990); State v. Gulbrandson, 906 P.2d 579 (Ariz. 1995);  People v. Bradford, 929 P.2d 544 (Calif. 1997); Taylor v. State, 843 P.2d 682 (Kan. 1992);  State v. Hamm, 818 P.2d 830 (Mont. 1991);  People v. Simmons, 364 N.W.2d 783 (Mich. App. 1985); State v. Albright, 291 N.W.2d 487 (Wis. 1980).

16

Rodriguez, 612 P.2d 484, 489-91(Ariz. 1980); King v. State, 391 S.E.2d 660, 662 (Ga. App. 1990). Some courts have presumed that a defendant, educated by television and past courtroom experiences, has knowledge of his right to testify. United States v. Edwards, 897 F.2d 445, 447 (9th Cir. 1990); United States v. Martinez, 883 F.2d 750, 761 (9th Cir. 1989), vacated on other grounds, 928 F.2d 1470 (9th Cir. 1991); Taylor v. State, 843 P.2d 682, 688 (Kan. 1992). At least one court has concluded that, because of the peculiar nature of this right, it does not "attach" unless the accused claims it at trial. State v. Albright, 291 N.W.2d 487, 490-491 (Wis. 1980); see also United States v. Teague, 953 F.2d 1525, 1537 (11th Cir. 1992)(concurrence by J. Birch).

Opponents of the "demand" rule argue it is fatally flawed because it ignores the basic realities that both trial judges and defendants face. Tachibana v. State, 900 P.2d 1293 (Haw. 1995); Boyd v. United States, 586 A.2d 670, 677 (D.C. App. 1991). Requiring that a defendant address the court directly during the trial and express the desire to testify places a heavy burden on the defendant. United States v. Ortiz, 82 F.3d 1066, 1071 (D.C. 1996). Even if a defendant is aware of the right to testify, the defendant may not be aware that an objection must be made or that the right will forever be lost. Boyd, 586 A.2d at 677. Because the waiver of a fundamental constitutional right must be "the intentional relinquishment or abandonment of a known right or privilege," finding waiver upon a presumption of knowledge may be problematic. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023 (1938). Moreover, these courts note, it is a reality of the courtroom that defendants who speak out of turn at trial are often quickly reprimanded and instructed to address the court only through counsel. United States v. Teague, 908 F.2d 752, 759 (11th Cir. 1990).

17

A third group of courts has devised a compromise between the two approaches previously described. This method has been called the "post-trial challenge approach." Boyd v. State, 586 A.2d 670, 677 (D.C. App. 1991). In this approach, the trial judge need not, sua sponte, question the defendant during the trial, but, even if the defendant does not bring the matter to the attention of the trial court, the defendant is free to bring a post-trial challenge generally based on the ineffective assistance of counsel. This approach appears to be the practice in the largest number of jurisdictions, both state and federal.[17] These courts hold that defense counsel has the responsibility to advise the defendant of the reciprocal rights to testify or to remain silent and to explain the tactical advantages or disadvantages of each, and, although the decision is one that is fraught with implications for defense strategy, the ultimate decision rests with the defendant. State v. Savage, 577 A.2d 455, 473 (N.J. 1990). The duty of providing advice and ensuring that any waiver of the right to testify is knowing and intelligent rests not with the trial court, but with defense counsel. United States v. Pennycooke, 65 F.3d 9, 12 (11th Cir. 1995).

The courts that follow the demand rule and those that adhere to the post-trial challenge approach agree that a trial court may presume that the

_____

[17] See, e.g. Liegakos v. Cooke, 106 F.3d 1381 (7th Cir. 1997); United States v. Ortiz, 82 F.3d 1066 (D.C. Cir. 1996); United States v. Pennycooke, 65 F.3d 9 (3d Cir. 1995); United States v. Teague, 953 F.2d 1525 (11th Circ. 1992); Underwood v. Clark, 939 F.2d 473 (7th Cir. 1991); Siciliano v. Vose, 834 F.2d 29 (1st Cir. 1987); Campos v. United States, 930 F.Supp. 787 (E.D.N.Y. 1996); Porter v. Singletary, 883 F.Supp. 660 (M.D.Fla. 1995); Smith v. Campbell, 781 F.Supp. 521 (M.D. Tenn. 1991); United States v. DiSalvo, 726 F.Supp. 596 (E.D.Pa. 1989); People v. Mosqueda, 5 Cal.App.3d 540, 85 Cal. Rptr. 346 (1970); Gill v. State, 632 So.2d 660 (Fla. App. 1994); Commonwealth v. Freeman, 564 N.E.2d 11 (Mass. App. 1990); State v. Rosillo, 281 N.W. 877 (Minn. 1979); State v. Savage, 577 A.2d 455 (N.J. 1990); State v. Brooks, 833 P.2d 362 (Utah. App. 1992); Brown v. State, 453 S.E.2d 251 (S.C. 1994); State v. Mumley, 571 A.2d 44 (Vt. 1989); State v. Thomas, 910 P.2d 475 (Wash. 1996).

defendant has knowingly and voluntarily waived the right to testify from the defendant's conduct. However, a major difference between the two is that those that follow the "demand" rule find that the defendant's silence at trial not only waives the constitutional right but denies the defendant the possibility of ever rebutting that presumption. The post-trial challenge approach allows a defendant to demonstrate, either on direct appeal or in a post-conviction proceeding, that his waiver was neither knowing nor voluntary because defense counsel was ineffective.

Although Tennessee courts have not addressed this issue directly, the post-trial challenge approach is most consistent with the manner in which Tennessee courts have resolved the question of whether an accused has been denied the right to testify. In Vermilye v. State, 754 S.W.2d 82 (Tenn. Crim. App. 1987), a post-conviction petitioner claimed ineffective assistance of counsel due to the failure of defense counsel to prepare him to testify at trial and thereby denied him the right to testify effectively.[18] This court held that counsel was not ineffective as he had met with the petitioner many times, the record demonstrated that the petitioner had made the decision to testify, and the petitioner had failed to show how his attorney could have better prepared him to testify. Id. at 88. In an unpublished case, a panel of this court held that, under Tennessee law, the trial court is not required to hold, sua sponte, a "jury-out" hearing for the purpose of advising the defendant on the record that he has the

---

[18] Vermilye was decided before the decision in Rock v. Arkansas. The court discussed neither the constitutionality of the right nor the issue of waiver but held, based on A.B.A. Standards of Criminal Justice, that the decision to testify or to remain silent should be made by the defendant. 754 S.W.2d at 88.

right to testify or to remain silent and determining the defendant's wishes.[19]

State v. Danny L. Evans, No. 02C01-9205-CR-00109, slip op. at 10 (Tenn. Crim. App., Jackson, Nov. 10, 1993), perm. app. denied (Tenn. 1994). At the hearing, petitioner admitted that he had discussed testifying with his counsel and that counsel did not tell him not to testify. Evans, slip op. at 6. The court noted that the petitioner was "no stranger to the criminal justice system" and affirmed the trial court's conclusion that the defendant's conduct provided a sufficient basis from which to infer that he had waived the right without the necessity of holding an on-the-record inquiry. Evans, slip op. at 10 -11.[20] Both Vermilye and Evans were post-conviction proceedings in which the petitioners alleged that trial counsel had been ineffective by denying them the right to testify on their own behalf. Neither had raised the issue in the trial court, and, in both instances, this

---

[19] In Evans, the court recognized the practice of many criminal defense lawyers to request a "jury-out" hearing in which the attorney places the defendant on the stand and questions the defendant about the decision on the record. Slip op. at 10. We believe this to be a prudent practice in many instances. Trial courts have it within their discretion to allow such hearing to take place when defense counsel requests it or extraordinary circumstances alert the trial court to the necessity.

[20] Our research uncovered two other cases that have some bearing on this issue. In a post-conviction proceeding, a panel of this court found that defense counsel's belated remarks did not suffice to show an intelligent and knowing waiver of the right to testify and found that counsel had denied the petitioner the right to testify at trial. Walter Keith Johnson v. State, No. 1037, slip op. at 6 (Tenn. Crim. App., Knoxville, Sept. 2, 1992), perm. to appeal granted (Tenn. 1993), aff'd per curiam in Walter Keith Johnson v. State, No. 03S01-9306-CR-00032 (Tenn., Knoxville, Feb. 22, 1994) (not for publication). In its discussion of the issue, the panel recommended that defense counsel place the defendant's decision on the record. Id. at 4. In a second case, the United States District Court for the Middle District of Tennessee considered whether a defendant's constitutional rights had been violated by the trial judge's refusal to allow him to testify after the state's rebuttal case had ended. Smith v. Campbell, 781 F.Supp. 521, 530 (M.D.Tenn. 1991) The court concluded that the defendant had knowingly and voluntarily waived his right to testify upon advice of counsel and that the trial court had not erred in refusing to allow him to testify after the state's rebuttal because the defendant's proffered testimony would not have been appropriate as rebuttal. Id.

court concluded that the record contained sufficient proof to demonstrate that the defendant had made the decision based on advice of counsel.

For the reasons stated above, we affirm that in Tennessee the trial court is not required to engage each defendant, sua sponte, in an on-the record colloquy to ensure that any waiver of the defendant's right to testify is knowing and voluntary. Because of the delicate balance between a defendant's right to remain silent and his equally fundamental right to testify, Campbell v. State, 469 S.W.2d 506, 509 (Tenn. Crim. App. 1971), we believe that the responsibility for informing the defendant of this right lies with defense counsel. A defendant should personally make the decision whether to testify after receiving counsel's careful and thorough advice as to the benefits and detriments of placing the defendant's testimony before the jury. Absent any indications to the contrary, a trial judge may presume from the defendant's conduct that the defendant personally made a knowing and intelligent decision to testify or not to testify upon the advice of competent counsel. However, in accordance with Tennessee case law and that of numerous federal and state jurisdictions, the defendant may attempt to rebut that presumption in a post-trial challenge even if the defendant did not bring the matter to the trial judge's attention during the trial. See, e.g., United States v. Pennycooke, 65 F.3d 9, 13 (3rd Cir. 1995); United States v. Teague, 953 F.2d 1525, 1534 (11th Cir. 1992); People v. Bradford, 929 P.2d 544, 574 (Cal. 1997); King v. State, 391 S.E.2d 660, 662 (Ga. App. 1990); Commonwealth v. Freeman, 564 N.E. 2d 11, 14 (Mass. App. 1990); State v. Savage, 577 A.2d 455, 473 (N.J. 1990).

II. Application of the law to the facts of this case

21

The issue of whether defense counsel rested his case without advising and consulting with the defendant is ultimately a question of fact. Smith v. Campbell, 781 F.Supp. 521, 531(M.D. Tenn. 1991). Both Napoleon Momon and the attorney who represented him at trial testified that the attorney had decided that Momon would not testify and that the attorney informed Momon through his son as they were reentering the courtroom. Although the attorney explained to the defendant's son that two jurors in the previous trial had not found Momon to be credible, the attorney clearly stated that he was passing on the information rather than giving advice upon which the defendant could make his own decision. Moreover, since the defendant was notified of the decision at the door to the courtroom, there was little if any opportunity for him to engage in any discussion with his attorney. [21]

In his written findings of fact, the post-conviction judge found that trial counsel made the decision not to call the defendant to the stand. However, the judge erroneously determined that since the decision was a matter of trial strategy, counsel was not ineffective. Because the right to testify is a fundamental constitutional right that is personal to the defendant, only the defendant may waive that right. Although the trial judge was justified in presuming at trial that the defendant had knowingly and intelligently waived his right to testify, uncontradicted testimony at the hearing conclusively demonstrates that his attorney neither advised him that he had the right to testify if he so desired nor discussed with him the advantages and disadvantages that might flow from his decision. Counsel knew that the defendant's statements

---

[21] The situation would have precluded much discussion between any defendant and attorney, but for this particular defendant, who is deaf and partially blind in addition to being confined to a wheel chair, his attorney's pronouncement left him with little opportunity to object.

were inconsistent in some regards and that a letter from Momon to his sister-in-law cast the defendant in an unfavorable light.[22]  Yet he did not raise the question of Momon's testimony until the state's proof was complete or nearly complete.  In fact, the record indicates that his preparations for the second trial did not include meeting with his client. In other words, trial counsel never informed the defendant of his ultimate right to decide whether or not to testify and failed to consult with and advise his client on what may be the single most important decision made at trial.  Boyd v. United States, 586 A.2d 670, 673 (D.C.App. 1991).  Counsel, despite the directives of the American Bar Association's Standards of Criminal Justice and the pronouncements of the Tennessee Supreme Court in Campbell and Burkhart and the holding of this court in Vermilye,  apparently believed that it was his prerogative to make the decision as to whether the petitioner would testify.   In this respect, counsel's conduct "fell below an objective standard of reasonableness."  Strickland v. Washington, 466 U.S. 668, 690; 104 S.Ct. 2052, 2065 (1984).

Our inquiry, however, does not stop with the first prong of the Strickland standard.  We must now consider whether counsel's error was so serious as to deprive the defendant of a fair trial and to call into question the reliability of the outcome.  Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; United States v. Teague, 935 F.2d 1525, 1534, (11th Cir. 1992); Campos v. United States, 930 F.Supp. 787, 793 (E.D.N.Y. 1996);  Porter v. Singletary, 883 F.Supp. 660, 667 (M.D. Fla. 1995).[23]

---

[22]    Counsel mentioned the inconsistent statements in his opening and attempted to explain them away as natural given the conditions under which the shooting occurred and length of time between the two statements.

[23]    But see, Boyd v. United States, 586 A.2d 670, 673 (D.C.App. 1991) (Chapman standard inapplicable where right is designed to protect human dignity);  State v. Rosillo, 281 N.W. 2d 877, 879 (Minn. 1979) (denial of the right

23

A Tennessee case, although not directly on point, provides guidance in our determination of whether Strickland's second prong has been satisfied. In State v. Zimmerman, 823 S.W.2d 220 (Tenn. Crim. App. 1991), this court considered on direct appeal whether trial counsel had been ineffective in that, after he had told the jury in his opening statement that the defendant and other witnesses would testify about the "battered wife syndrome," he changed his mind and rested without putting on any proof. Counsel then referred to the absent evidence again in his closing argument. Id. at 225-226. Unlike the attorney in the present case, defense counsel in Zimmerman discussed the matter with his client and she confirmed her approval of his decision in a jury-out hearing. Zimmerman, 823 S.W.2d at 221. There was, therefore, no deprivation of the constitutional right to testify. The issue addressed is whether the attorney's decision to rest without putting on the defendant or several other witnesses was ineffective. In determining that counsel had been ineffective, the Zimmerman court cited five factors which tend to indicate ineffective assistance when defense counsel fails to call a defendant to the stand:

> (1)    only the victim and the defendant were present when the offense was committed;
>
> (2)    only the defendant could present a "full version of [the defendant's] theory of the facts";
>
> (3)    the defendant's testimony could not be impeached by prior criminal convictions;
>
> (4)    the defendant could give an account of the relationship with the victim; and

---

to testify is never harmless error). We note that, in Campbell v. State, the Court of Criminal Appeals found the trial court's failure to allow certain testimony by the defendants to be "harmless beyond a reasonable doubt" under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824 (1967). Campbell, 469 S.W.2d at 509. However Campbell was a direct appeal and involved an action of the trial court rather than a collateral attack based on the ineffective assistance of counsel.

> (5)    the attorney had let in objectionable, prejudicial testimony with the intention of clarifying it with the testimony of the defendant.

State v. Zimmerman, 823 S.W.2d at 227 (quoting from State v. Gfeller, No. 87-59-III (Tenn. Crim. App., Nashville, July 24, 1987). The court concluded that all five of these factors were applicable and that, in addition, other evidence favorable to the defendant would have come into the record had the other witnesses testified as planned   Id.

We recognize the special nature of a defendant's testimony in a criminal trial. A defendant's testimony gives the jury "an immediate and visible impression of him as a person" and may "color their view of the entire case against him. " People v. Curtis, 681 P.2d 504, 513 (Colo. 1984). Only the defendant can present direct evidence of his state of mind, and when an accused takes the stand he has had "his day in court" in the most literal sense. State v. Neuman, 371 S.E.2d 77, 81 (W.Va. 1988).   Therefore, a defendant's testimony is often of greater significance than that of any other witness.

In this case, as in Zimmerman and Gfeller, only the victim and the defendant were present when the offense occurred and only the defendant could present a full version of the defense theory of the facts and testify to his relationship with the victim. If he had testified, he may have been able to blunt the prosecution's attack on his credibility in closing argument by explaining the inconsistencies between his statement to the police and his deposition taken in a related civil matter. He may have convinced the jury that his letter propositioning his sister-in-law was inconsequential. This defendant, in particular, who has many physical infirmities, may have colored the jury's view of the entire case had he testified. And, as the defendant points out, when he testified at his first trial,

25

the jury acquitted him of first degree murder and was unable to return a verdict on second degree murder.

On the other hand, Momon's theory of the facts was before the jury in his statement to the police and in his deposition. Although there were inconsistencies between the two statements, the inconsistencies concerned rather minor points such as whether he put the pistol in the drawer or on the stand beside the bed, or the precise manner in which he was holding the pistol when he alleged she grabbed for it. Moreover, if Momon had testified, the state may have been able to impeach Momon's credibility with a twenty-year old conviction for manslaughter. The fact that the jury in the first trial could not reach a verdict on second-degree murder does not necessarily mean that the defendant's testimony would have changed the result in the second trial. Defendants are not infrequently convicted in a second trial despite having a "hung" jury in the first. The record contains indications that Momon may not have been a good witness. According to the trial attorney, he interviewed two jurors after the first trial. These jurors told him that they had not believed Momon's story of an accidental shooting, and the trial judge at the sentencing hearing also found Momon to be without remorse and lacking credibility.

Moreover, the record before us lacks sufficient indication of what Momon's testimony would have been had he testified. Although he took the stand at the post-conviction hearing, little of his testimony reflects what he might

have said at trial.[24]  The transcript of the first trial is not in the record on appeal.[25]

Unlike the jury in Zimmerman, this jury was not led to believe that the defendant would testify, nor were other witnesses favorable to the defense silenced by the unilateral decision to rest without putting on any proof.  Despite the obvious importance of any defendant's testimony,  it would be sheer speculation to evaluate the potential impact of Momon's testimony absent some knowledge of what that testimony would have been.

We find, therefore, that although trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms so that he was not functioning as "counsel" guaranteed by the United States Constitution, the petitioner has failed to meet his burden of demonstrating that there is a reasonable probability that but for counsel's failure to inform and advise the defendant of his right to testify, the result of the proceeding would have been different.  Strickland, 466 U.S. at 695.

## III.  **Other Allegations of Ineffective Assistance of Counsel**

The petitioner also contends that trial counsel was ineffective because he failed to raise the theory of self-defense, because he did not investigate the state's witnesses thoroughly, and because he failed to confer with the defendant prior to his second trial.  We have already found that, prior to the second trial,  the attorney failed to inform and advise his client about his right to testify, but that, on these facts, we are unable to conclude that this deficiency

---

[24]     At one point, counsel asked Momon what he told his trial attorney about the letter to his sister-in-law in which he invites her to let him "love her just once."  Momon readily admitted writing the letter and his brief remark implies that his wife had somehow initiated the communication.

[25]     See footnote 4 above.

27

deprived the defendant of a fair trial or created serious questions about the validity of the outcome. With respect to the other allegations, the trial judge found that the defendant had never raised the issue of self-defense with his attorney and that the entire defense was predicated on Momon's statement that the shooting was accidental. The trial judge accredited the attorney's testimony and found that the attorney had met with the defendant and his son numerous times prior to the first trial and that he was sufficiently familiar with the case at the second trial. After a thorough review of the record, we conclude that the evidence does not preponderate against the trial judge's findings and that, with respect to these matters, trial counsel performance was not deficient.

## IV. Conclusion

The decision to waive or exercise the constitutional right to testify must be made by the accused with the thorough and careful advice of counsel. In this case, the petitioner's trial counsel failed to advise him of his constitutional right to testify and made the unilateral decision that the petitioner would not take the stand at the second trial. In this respect, trial counsel's performance was deficient. However, on this record, we are unable to conclude that, but for counsel's error, there is a reasonable probability that the outcome of the trial would have been different.

We affirm the judgment of the post-conviction court.

_____
CURWOOD WITT, Judge

_____

28

JOHN H. PEAY, Judge

_____
JOSEPH M. TIPTON, Judge